**In re BDT FARMS, INC., Debtor.**

**Bankruptcy No. BK–88–07083–LN.**

United States Bankruptcy Court,
W.D. Oklahoma.

Feb. 16, 1993.

Opinion on reconsideration see 152 B.R. 642.

Anthony L. Jackson, Oklahoma City, OK, for debtor.

John Myles, Oklahoma City, OK, for Chapter 12 Standing Trustee.

Jack M. Cornelius, Oklahoma City, OK, Chapter 12 Standing Trustee.

## ORDER ON DEBTOR'S MOTION FOR ORDER REQUIRING TRUSTEE TO CLOSE CHAPTER 12 CASE

PAUL B. LINDSEY, Bankruptcy Judge.

### BACKGROUND

This Chapter 12 case was commenced on January 15, 1988, when debtor filed its voluntary petition under Chapter 12 of the Bankruptcy Code.[1] Debtor's Chapter 12 plan, as modified, was confirmed by this court on June 15, 1989. Subsequently, the court entered its Order Implementing Confirmation Order on August 25, 1989, although this order was not filed until October 25, 1989.

The Chapter 12 Trustee ("Trustee") made the final distribution of payments to secured and unsecured creditors pursuant to the plan on November 10, 1992 and, on the same day, wrote to counsel for debtor and advised that debtor still owed $542.89 in Trustee's fees assessed against a direct payment of an administrative claim pursuant to the terms of the plan. On December 2, 1992, debtor filed its motion seeking an order requiring the Trustee to close the case, to which the Trustee objected.

A hearing was held before the court on debtor's motion, at the conclusion of which the court required counsel for the Trustee to provide the court with an accounting of the Trustee's fees to which Trustee asserted he was entitled, of any and all payments made by debtor, and of Trustee's basis for asserting that such payments were in incorrect amounts. The requested accounting was timely submitted, along with a brief supporting the Trustee's objection to debtor's motion.

The confirmed Chapter 12 plan provided for payments by debtor to the Trustee on October 1, 1989, 1990 and 1991, and April 1, 1990, 1991 and 1992. The plan provided that the administrative fee payable to the Trustee would be "at the percentage set by the Attorney General pursuant to 28 U.S.C. Section 586(e), *effective on the date of the payment.*" [Emphasis supplied.] This provision, coupled with the frequent changes to the appropriate percentage during the life of debtor's plan, has created most if not all of the problems with which this court must deal at this time.

### THE ACCOUNTING—THE TRUSTEE'S CONTENTIONS

According to the Trustee's accounting, the Chapter 12 Trustee's fee attributable to the standing Chapter 12 Trustee in this district, as set by the Attorney general pursuant to 28 U.S.C. 586(e), was 10% on June 15, 1989, when debtor's plan was confirmed. It remained at that rate until April 14, 1990, when it was lowered to 9%. On January 13, 1991, the rate was again lowered to 8%. The fee remained at that rate until it was increased to "a rate equivalent to 11.111111% of plan payments."[2] This increase was ordered by memorandum dated May 6, 1991, signed by the Director of the Executive Office for United States Trustees, but pursuant to the memoran-

---

1. References herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., unless the context requires otherwise.

2. Although the trustee, in the accounting, asserted that "[a]n explanation of the manner in which that rate was determined is included in a brief that is being submitted contemporaneously with this accounting," no such explanation has been forthcoming. The propriety of this rate will be discussed hereafter, and the court requires no explanation.

dum, was to be applied retroactively to April 1, 1991.

It is not at all clear whether the periodic changes to the rate at which Trustee's fees are required to be computed have been timely communicated to Chapter 12 debtors or their counsel. It is clear, however, that those changes are largely responsible for the confusion and frustration now present in this case, and in other Chapter 12 cases as well.

Minor discrepancies in debtor's October 1989 and April 1990 payments, not related to the Trustee's fee, were quickly rectified, and the October 1990 payment was correct. Thus, until April 1991, debtor's "account" with the Trustee was in balance. On April 4, 1991, the Trustee received debtor's April 1, 1991 payment, including a Trustee's fee computed at 9%. Apparently, debtor had not been notified of the January 13, 1991 decrease of the rate to 8%. Since the Trustee then believed the 8% rate to be applicable, the 1% difference, $255.72, was refunded to debtor.[3]

The Trustee did not receive, and apparently was not otherwise notified of, the May 6, 1991 memorandum directing the retroactive increase of the rate to 11.-111111%, until June 1991, and did not notify debtor of the change and that his account was $689.72 short of the amount required to make the April 1, 1991 distribution to unsecured creditors until October 1991.[4] The $689.72 was the difference between the Trustee's fee collected on payments made by Trustee to creditors at 8% and those which would be due at $11.111111%. Debtor' counsel advised the Trustee that debtor refused to pay the additional Trustee's fees, and the Trustee

paid himself the delinquent fees from funds in debtor's account. No part of the scheduled April 1991 liquidation value distribution to unsecured creditors was made by the Trustee.

Debtor's October 1991 payment was timely made, including the Trustee's fee at 11.111111%. On April 3, 1992, Trustee received from debtor $29,103.48. This amount was $689.71 more than was required to make all April 1992 payments provided for by the plan, apparently in response to the Trustee's October 1991 demand. Nevertheless, Trustee made only the required payments to the secured creditors, and to himself for the Trustee's fee thereon.

In April 1992, debtor's account showed a balance of $7,439.23. Under the confirmed plan, a liquidation value distribution to unsecured creditors, in the amount of $3,395.29, was to be made in April 1991 and April 1992. The Trustee's fees on each such payment, at $11.111111%, would have been $377.25. Thus, debtor's account was at that time only $105.85 short of the $7,545.08 which would have been required to pay the liquidation value distribution to unsecured creditors in full for both years and to pay the Trustee's fee on both such payments. Nevertheless, the Trustee made no such distribution, for either year.

On April 28, 1992, Trustee received $105.86 from debtor's counsel, with a letter stating that the tendered funds represented debtor's final payment in connection with the case. Still, no payment was made to the unsecured creditors.

Also in April 1992, the Trustee was notified by a major secured creditor that the plan called for debtor's obligation to that

---

3. The refund check was written to debtor on April 10, 1991. In the accounting supplied by the Trustee, it is conceded that on that date, there were sufficient funds to make the required liquidation value distribution to unsecured creditors and to pay the 8% Trustee's fee then believed to be due thereon. Even though the memorandum raising the rate, retroactively, was not written until May 6, 1991, and was not communicated to the Trustee until June 1991, the Trustee asserts that the memorandum was received "[b]efore the distribution of Liquidation value could be completed."

4. *See* Exhibits 8 and 14 to Debtor's Response to Trustee's Accounting and Supplemental Brief. In his accounting, the Trustee contends that debtor was first notified of the shortage on July 29, 1991, and that the October letter was a second notice. The accounting and supplemental brief are not accompanied by copies of correspondence, and there is therefore no evidence in the record of the earlier communication.

institution to begin earning interest on February 29, 1992, and that debtor owed an additional $180.09 in interest. The Trustee immediately paid such amount to the creditor, and paid himself a $20.01 Trustee's fee thereon.

Counsel for Trustee asserts that, in preparation for making the liquidation value distribution to unsecured creditors, he discovered that debtor's counsel had been awarded an administrative claim in the amount of $5,428.90, which under the terms of the confirmed plan, was to be paid directly by debtor. Counsel asserted that under the confirmed plan, such claim was subject to the assessment of a Trustee's fee on its payment. Payment of the claim was made in September 1989, and counsel for the Trustee contends that debtor owes a 10% Trustee's fee on that payment, in the amount of $542.89.

On September 9, 1992, the Trustee, incredibly, gave notice of his intention to return funds to the debtor as credit for the direct payment of the administrative claim of debtor's counsel. This action was ostensibly proposed "[p]ursuant to the Trustee's policy of crediting payments of administrative claims against the liquidation value distribution. . . ." No further explanation was offered.

The proposal was objected to by the unsecured creditor to whom two years of plan distributions were still due and wholly unpaid. On September 30, 1992, the Trustee and the objecting party agreed, as to the undisputed portion of the funds, that $1,361.68 should be paid to the unsecured creditor and that the Trustee was entitled to the $151.30 Trustee's fee attributable thereto.[5]

After a hearing on the notice and objection, held November 9, 1992, the parties were directed by the court to submit supplemental briefs on the propriety of the Trustee's "policy" of crediting direct payments of administrative claims against the

liquidation value distributions to the unsecured creditors. On the following day, without, of course, providing the requested briefs, an agreement was reached, in which the unsecured creditor agreed to accept the remaining funds on hand, less the appropriate Trustee's fee, in full satisfaction of it unsecured claim against the estate. Thus, $5,228.80 was paid to the unsecured creditor and the trustee received the $603.21 Trustee's fee attributable to that payment.[6] The total amount distributed to the unsecured creditor, pursuant to its agreement, was $200.10 less than the amount called for by the confirmed plan. The Trustee asserts that, "for technical accuracy," he is still owed $20.01 in trustee's fees on the $200.10 provided for in the confirmed plan which was not distributed. Interestingly, Trustee calculates such fee at 10%, rather than the 11.111111% claimed by him to have been the appropriate rate at all times since April 1, 1991, the date on which the 1991 liquidation value distribution to unsecured creditors was to have been made.

Since the Trustee has not received the $542.89 trustee's fee which he claims is due him in connection with the $5,428.90 direct payment by debtor of the administrative claim awarded to his counsel and, presumably, the $20.01 Trustee's fee discussed in the next preceding paragraph, the Trustee continues to object to debtor's request that he be required to close the case.

## THE DEBTOR'S RESPONSE

In response to the Trustee's accounting and brief, debtor first attacks the Trustee's assertion that a Trustee's fee is due with regard to the administrative claim allowed to debtor's counsel and paid directly by debtor in 1989. Debtor relies primarily upon the specific language of the plan in support of its contention that no such fee is payable. Secondarily, debtor contends that the Trustee had sufficient funds in his pos-

5. The trustee's accounting contains no explanation of why the stated amount, $1,512.98, was considered undisputed, and this court has been unable to reach a definitive explanation of its own.

6. It is noted that 11.111111% of $5,228.80 is $580.98, not $603.21. Thus the amount collected by the trustee in connection with this payment was $22.23 more than the amount to which even the trustee contends he was entitled.

session from which the claimed fee could have been paid, but that in November 1992, he paid out all of those funds in the liquidation value distribution to unsecured creditors and the Trustee's fee thereon.

Debtor next recounts the sequence of events, including payments, correspondence and the like, substantially as was set out in the Trustee's accounting. Debtor notes, however, that although the Trustee was advised in May 1991 of the 1989 direct payment of the administrative claim by debtor, The Trustee claimed no Trustee's fee in connection with that payment until November 1992.

Debtor contends that the Trustee's fee in effect in April 1991, when debtor's payment was made, was 8%. It is further contended that the increase to 11.111111%, purportedly retroactively effective April 1, 1991, although imposed by memorandum dated May 6, 1991, received by the Trustee in June 1991 and communicated to debtor in October 1991, was ineffective, at least insofar as debtor's April 1991 payment is concerned.

Finally, debtor contends, and provides copies of correspondence and communications supporting the contention, that it was told on numerous occasions what would be required in order to complete the plan and to permit the Trustee to close the case. In each instance, debtor contends, the Trustee, his staff or his counsel, reneged on their promises and sought additional funds. Debtor asks that the court determine that all payments have been made and order the Trustee to file his final report, close the case and grant debtor its discharge or, in the alternative, determine the exact amount of any payment still owed by debtor, and order the Trustee to file his final report within one week after receiving payment of such amount.

## THE 1991 INCREASE IN THE TRUSTEE'S FEE—SHOULD IT BE APPLIED TO DEBTOR'S APRIL 1991 PAYMENTS?

As is noted above, debtor's confirmed plan provides that:

Debtor will pay the Trustee an administrative fee upon all payments under the Plan at the percentage set by the Attorney General pursuant to 28 U.S.C. Section 586(e), effective on the date of the payment.

By Order dated May 6, 1991, signed by the Director of the Executive Office for United States Trustees, the percentage fee to be collected by the standing Chapter 12 Trustee in this district was fixed at "10% of payments received under plans, with respect to payments in an aggregate amount not to exceed $450,000...." The order purports to fix this rate "effective April 1, 1991 to December 31, 1991." [7]

On April 4, 1991, debtor's April 1991 payment was received by the Trustee. On that date, Trustee made payments to creditors and of the 8% Trustee's fees believed to be attributable thereto, except for the liquidation value distribution to unsecured creditors, as has been discussed above. On April 10, 1991, the Trustee transmitted to debtor the $255.72 refund of the apparent overpayment of Trustee's fees to debtor. Thus, between April 3 and April 10, 1991, the Trustee received $27,873.91 from debtor, and disbursed $22,177.10 to creditors, $1,774.40 to himself as Trustee's fees, and $255.72 to debtor as a refund of the perceived overpayment.

■ This court has reviewed 28 U.S.C. § 586(e), and finds nothing whatever therein which would authorize the Attorney General to fix the percentage fee to be collected by the standing Chapter 12 Trustee other than on a prospective basis.

Subsection (e)(1) provides that the Attorney General, after consultation with the United States Trustee who appointed a standing trustee for cases under Chapter 12 or Chapter 13, "shall fix ... a percentage fee not to exceed ... in the case of a debtor who is a family farmer, the sum of ... not to exceed ten percent of the payments made under the plan of such debtor...."

---

**7.** *See* Exhibit 14 to Debtor's Response to Trustee's Accounting and Supplemental Brief.

Subsection (e)(2) provides that the standing trustee "shall collect such percentage fee from all payments received by such individual [the standing trustee] under plans...."

Presumably, the Attorney General is of the view that, had he chosen to do so, he could have made the percentage fee increase retroactive to any earlier date, at least back to the date on which he last fixed the fee—in this case, January 13, 1991. There is no magic to the April 1, 1991 date, except that it particularly impacts this debtor's confirmed plan. It is likely that other Chapter 12 plans were also affected by the retroactive increase, but it is also likely that many such plans, under which no payments were required to be made during the period April 1 through May 6, 1991, were completely unaffected.

It is clear that to permit retroactive changes to the percentage fee required to be collected by the standing Chapter 12 and 13 Trustees, whether increases or decreases, would, as has been the case here, create an administrative nightmare for debtors, as well as for the Trustees, who administer hundreds or even thousands of such cases. Had the Congress intended to permit the retroactive fixing of percentage fees, it could, and would have said so. It did not, and it is therefore this court's view that such authority was not intended to be granted.

The court's belief that the increased Trustee's fee could not be collected by the Trustee at least until May 6, 1991, when the order increasing the fee was promulgated, is also supported by the specific language of debtor's confirmed plan, as quoted above. The percentage fee effective on April 4, 1991, when debtor's payment was received by the Trustee, was 8%. That is the percentage which the Trustee is authorized to collect from the funds received that date.

On April 4, 1991, the Trustee received $27,873.91 from debtor. After deducting the $255.72 refunded to debtor as a 1% overpayment of the 8% Trustee's fee then thought to be the appropriate fee, the Trustee was left with $27,618.19. Of that amount, $25,572.39 was to be paid to creditors and $2,045.80 represented the 8% Trustee's fee. The Trustee, however, made payments to creditors at that time of only $22,177.10, the liquidation value distribution to unsecured creditors of $3,395.29 being deferred until late 1992, as is related above. At that time, Trustee paid himself $1,774.40 as the 8% Trustee's fee on the $22,177.10.[8]

■ Since the percentage fee "effective on the date of payment" was 8%, the Trustee is entitled to collect only that percentage from that payment, even though the entire payment was not disbursed to creditors as contemplated by the plan until later. As a result, the Trustee is entitled to a Trustee's fee of only $271.63 with regard to the first $3,395.29 subsequently paid as a liquidation value distribution payment to unsecured creditors, even though that distribution was not made until September and November 1992, when the higher percentage fee was in effect. The fee is collected "from all payments received," and therefore the percentage must be the percentage in effect on the date of receipt. In this case, that percentage was 8%, at least until May 6, 1991.

### THE ADMINISTRATIVE CLAIM PAID DIRECTLY BY DEBTOR—SHOULD DEBTOR HAVE TO PAY A TRUSTEE'S FEE ON IT?

■ The Trustee presumably relies upon the language of debtor's confirmed plan quoted in the next preceding section of this order, which appears to require the payment of a percentage fee to the Trustee "upon all payments under the Plan." The

---

8. It is noted that the appropriate Trustee's fee on $22,177.10, at 8%, would have been $1,774.17.

same paragraph of the confirmed plan also provides that a trustee's fee will be imposed upon debtor if it makes any payment directly to a prepetition creditor.

The paragraph in which the foregoing provisions appear follows two paragraphs describing administrative expenses. These paragraphs provide that attorney fees to debtor's attorneys will constitute most of the administrative expenses, and that debtor will pay such expenses in cash, in full, on the confirmation date or as soon thereafter as is practicable.

Although debtor's confirmed plan refers to "all payments under the Plan," it is noted that the authority for the provision, 28 U.S.C. 586(e), provides, in subparagraph (2), that the standing Trustee "shall collect such percentage fee from all payments *received by such individual* [the standing Trustee] under plans...." [Emphasis supplied.]

This court is of the view that debtor's confirmed plan does not contemplate nor require debtor to pay a Trustee's fee on administrative claims paid directly by it. Had that been contemplated, it could, and should have been clearly stated. Neither does this court believe that the provisions of 28 U.S.C. § 586(e)(2) require a different conclusion. The provision in debtor's confirmed plan requiring the payment of a Trustee's fee on any pre-petition claim paid directly by the debtor is not applicable to the administrative claims, which were generated and incurred post-petition.

Debtor will therefore not be required to pay to the Trustee a percentage Trustee's fee on the direct payment by debtor in 1989, as directed by the confirmed plan, of the $5,428.90 administrative claim awarded to its counsel.

## THE 11.111111% TRUSTEE'S FEE— IS IT PERMISSIBLE?

The court raises, *sua sponte*, the issue of whether the imposition of a percentage fee at "a rate equivalent to 11.111111% of plan payments" is permitted by 28 U.S.C. § 586(e).

In raising, considering and deciding this issue, as well as the issue decided earlier herein, whether the 1991 increase could be fixed retroactively, this court is fully cognizant of the recent court of appeals decision in *Dunivent v. Schollett (In re Schollett)*, 980 F.2d 639 (10th Cir.1992).

In *Dunivent*, the bankruptcy court confirmed the debtors' obligation to pay a 10% fee to the standing Chapter 12 Trustee on each plan payment. Debtors appealed to the district court, contending that the Trustee's duties in their case would involve nothing more than the writing of seven checks, and would require no more than 15 hours of the Trustee's time, for which Trustee would receive $15,000. On appeal, the Trustee argued that the statutory scheme which established the United States Trustee System removed any authority of the courts to review Trustees' fees.

The district court disagreed, and concluded that the courts retained the power to review Trustees' fees for reasonableness. It was then determined that the 10% fee was excessive, and the fee was reduced to 5%. The Trustee appealed.

The court of appeals, after a detailed discussion of the origin and purposes of the statutory provisions which established the United States Trustee System and its authority over the appointment of standing and case-by-case trustees, agreed with the majority of the courts which have addressed the issue, and determined that judicial review of the reasonableness of the standing Trustees' fees, as fixed by the Attorney General, is not authorized by the statute. The order of the district court was therefore reversed and the cause remanded to the bankruptcy court for further proceedings.

The teaching of *Dunivent* is that the reasonableness of percentage fees fixed by the Attorney General and to be collected by standing trustees in Chapter 12 and Chapter 13 cases, are not subject to judicial review. This court is, of course, bound by *Dunivent*, and is in agreement

with it in any event. What *Dunivent* did not decide, and what the court of appeals was not asked to decide in that case, was whether the courts retain the power to determine whether the Attorney General, in fixing those percentage fees, exceeded the authority granted to him by the statutes. That was the issue decided by this court in holding that the attempted *retroactive* increase of the percentage fee was not within the Attorney General's statutory authority. That is also the issue to be addressed by the court in connection with the Attorney General's fixing of the percentage fee at "a rate equivalent to 11.111111% of plan payments."

■ It is basic to this nation's system of checks and balances under the constitutional separation of powers that the judiciary be permitted to determine whether the executive, in the exercise of powers bestowed upon it by the legislature, has exceeded the limits of those powers. *Dunivent* does not hold, or even suggest, that such is not true in the circumstances presented here.

■ The May 6, 1991 order fixed the percentage fee as follows:

10% of payments received under plans, with respect to payments in an aggregate amount not to exceed $450,000; and 3% of payments received under plans, with respect to payments received after the aggregate amount of payments received under the plan exceeds $450,000.

As is noted above, the Trustee in this case promised to provide an explanation of the manner in which that rate was determined, but failed to do so. This court does not require such an explanation. The Attorney General's position with respect to the equivalent rate appears reasonably clear, even given the unequivocal maximum of 10% set out in 28 U.S.C. § 586(e)(1)(B), and given the fact that the May 6, 1991 order fixed the rate at 10%.

That "interpretation" of the Attorney General is apparently based upon the premise that the percentage fee on each plan payment should itself be considered a plan payment, and that a percentage fee should be assessed on that "payment" as well. Each successive "payment" would be treated in the same manner, until no further extension is necessary, or productive of additional funds, since less than one cent would be involved in any subsequent assessment. As an example, assume a single plan payment of $100,000:

| | |
|---|---:|
| Plan Payment | $100,000.00 |
| 10% fee on $100,000.00—"Payment" No. 2. | 10,000.00 |
| | $110,000.00 |
| 10% fee on $10,000.00—"Payment" No. 3. | 1,000.00 |
| | $111,000.00 |
| 10% fee on $1,000.00—"Payment" No. 4. | 100.00 |
| | $111,100.00 |
| 10% fee on $100.00—"Payment" No. 5. | 10.00 |
| | $111,110.00 |
| 10% fee on $10.00—"Payment" No. 6. | 1.00 |
| | $111,111.00 |
| 10% fee on $1.00—"Payment" No. 7. | 0.10 |
| | $111,111.10 |
| 10% fee on $0.10—"Payment" No. 8. | 0.01 |
| **Total Due, under Attorney General's Interpretation** | **$111,111.11** |

As may be seen from the foregoing table, the aggregate fees which would be paid under the Attorney General's interpretation total 11.11111% of the amount of the original plan payment. The debtor would be expected to make a single payment to the standing Trustee in the amount of $111,111.11, from which the Trustee would make the $100,000.00 payment to the creditor or creditors. The balance of the single payment, $11,111.11, or 1.11111% more than the maximum permitted by 28 U.S.C. § 586(e)(1), would be treated by the Trustee as seven (7) additional payments, each in the amount of 10% of the next preceding "payment," and would be taken by the Trustee as his fee.

It is difficult to adequately characterize the convoluted logic upon which this position is apparently grounded, or to understand the reasoning that would find it not in violation of the governing statutory provision, 28 U.S.C. § 586(e)(1). That the Attorney General would actually require the assessment of a fee on a fee on a fee on a fee on a fee on a fee, particularly with the initial fee in the maximum amount permitted by the governing statute, is most surprising, at best. The only possible justification for such a position appears to be the maximization of deposits to the United States Trustee System Fund, provided for by 28 U.S.C. § 586(e)(2). This court is convinced that the Congress did not contemplate, and that it would not countenance, such an aberrant interpretation.

The maximum percentage fee permitted by 28 U.S.C. § 586(e)(1), and that currently fixed by the Attorney General for collection by the standing Chapter 12 Trustee in this district, is 10% of the payments made under the plan. The standing Trustee is empowered to collect a fee in the amount of such percentage from all payments received by him. That amount, and no more. The interpretation of the Attorney General

which would permit the assessment and collection of 11.111111% of each plan payment is invalid and unenforceable.

## CONCLUSION

The court has concluded that the attempted retroactive increase of the percentage fee to be collected by the Trustee was ineffective with regard to payments made by debtor and received by the Trustee prior to May 6, 1991, the date of the memorandum order promulgating the increase. Thus, the percentage fee applicable to debtor's payment, received by the Trustee on April 4, 1991, including those portions thereof which were not distributed by the Trustee until September and November 1991, was 8%, the fee then in effect.

The court has also concluded that no percentage fee is owed to the Trustee with respect to the administrative claim awarded to debtor's counsel, and paid directly by debtor in 1989 in accordance with the terms of the confirmed plan.

Finally, the court has concluded that the Attorney General's interpretation, which would permit the Trustee to collect a percentage fee at a rate equivalent to 11.111111% of each plan payment, is beyond the authority conferred upon the Attorney General by 28 U.S.C. § 586(e), and that the maximum allowable rate is that set out in that provision, and in the order fixing the appropriate percentage to be collected in this district, 10%.

The following table recapitulates the payments made by the Trustee from funds paid in by debtor, the amounts collected as percentage fees, and the correct amounts, based upon the court's holdings herein, which should have been collected.[9] The table shows that the Trustee collected excessive fees, the aggregate amount of the excess over that which should have been collected being $1,288.50.

**9.** Since 28 U.S.C. § 586(e)(2) directs that the Trustee collect the percentage fee "from all amounts received" by him under the plan, it would seem that the Trustee would be better served by computing the appropriate fee when payments are received, rather than to wait until those funds are disbursed, as appears to be the Trustee's present practice.

| DATE 1991 | PAYMENT AMOUNT | FEES COLLECTED | CORRECT FEES % | $ | EXCESS FEES COLLECTED |
|---|---|---|---|---|---|
| 04/04 | $22,177.10 | $2,464.12 | 8.00 | $1,680.89 | $ 689.95 |
| 10/03 | $16,808.92 | $1,867.66 | 10.00 | $1,680.89 | $ 186.77 |
| **1992** | | | | | |
| 04/03 | $22,177.10 | $1,867.66 | 10.00 | $2,217.71 | $ 246.41 |
| 04/06 | $ 180.09 | $ 20.01 | 10.00 | $ 18.01 | $ 2.00 |
| 09/30 | $ 1,361.68 | $ 151.30 | 8.00* | $ 108.93 | $ 42.37 |
| 11/10 | $ 2,033.61 | $ 225.96 | 8.00* | $ 162.69 | $ 63.27 |
| 11/10 | $ 3,195.19 | $ 377.25 | 10.00 | $ 319.52 | $ 57.73 |
| **Total Excess Fees Collected** | | | | | **$1,288.50** |

*—These portions of the liquidation value distributions to unsecured creditors, totalling $3,395.29, were made with funds received by the Trustee on April 4, 1991, and are therefore subject to the 8% rate then in effect.

---

The Trustee should clearly not be permitted to retain the excess percentage fees collected by him. It is equally clear, however, that $200.10 of the funds collected by him should be disbursed to complete the liquidation value distribution contemplated by debtor's confirmed plan. Inasmuch as this amount is part of a payment which should have been made pursuant to the plan, and which surely would have been made but for the controversy discussed in this order, the trustee is entitled to a percentage fee in the amount of 10% thereof, or $20.01.

The Trustee will therefore be ordered to refund to debtor the sum of $1,068.39, to disburse the sum of $200.10 to Farm Credit Bank in order to complete the liquidation value distribution contemplated by debtor's confirmed plan, to credit $20.01 as the Trustee's percentage fee on the latter payment at the rate of 10%, and to take whatever further action is required in order to effect the closing of this Chapter 12 case at the earliest possible date.

This order is not intended, and should not be construed, as a reflection upon the standing Chapter 12 Trustee for this district, who has done, is doing, and this court is certain will continue to do an excellent job in the administration of the multiple cases consigned to his responsibility. It is clear, however, that substantial improvement could be made in the communications which take place, and should take place, between and among the Executive Office for United States Trustees, the staff of the standing Trustee, his counsel, and the debtors and their counsel. Failures to communicate and conflicting communications have, in this case and in others as well, exacerbated already difficult situations and have led to hard feelings on all sides. This situation can, and should be remedied.

IT IS SO ORDERED.