**In re Johnnie Marvin WINTER and Doris Ann Winter, Debtors.**

**Bankruptcy No. BK–87–4887–LN.**

United States Bankruptcy Court,
W.D. Oklahoma.

March 1, 1993.

Charles Underwood, Oklahoma City, OK, for debtors.

Gary A. Bryant, Oklahoma City, OK, for Kingfisher Bank & Trust Co.

W. Rogers Abbott, II, Oklahoma City, OK, for Standing Chapter 12 Trustee.

Jack Cornelius, Oklahoma City, OK, Standing Chapter 12 Trustee.

## ORDER ON NOTICE OF PROPOSED DISTRIBUTION OF FUNDS BY CHAPTER 12 TRUSTEE, ON THE RESPONSE THERETO, AND ON CREDITOR'S REQUEST FOR AN ACCOUNTING

PAUL B. LINDSEY, Bankruptcy Judge.

### BACKGROUND

This case was commenced by the filing by debtors, on July 1, 1987, of their voluntary petition under Chapter 12 of the Bankruptcy Code.[1] The Standing Chapter 12 Trustee for this district was appointed Trustee (hereafter, "Trustee"). The § 341 meeting of creditors was held on July 31, 1987. On August 27, 1987, debtors were authorized to employ counsel to represent them. Debtors filed their Chapter 12 plan on September 29, 1987. On December 15, 1987, a hearing was held, at which the

---

1. References herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., unless the context requires otherwise.

court confirmed debtors' Chapter 12 plan, subject to certain revisions being made and incorporated into an amended plan and into an order confirming the plan. Subsequently, on April 15, 1988, an amended plan was filed and an order confirming the amended plan was entered by the court.

Debtors' amended plan contains the following provisions relative to administrative and unsecured claims, respectively:

1. *Administrative Claims:*

The Trustee shall disburse dividends to all § 1226(a) claims and charges in advance of all other claims, unless their priority is expressly waived. Claims for professional fees, approved by the Court, shall be paid before any dividend is paid to unsecured creditors.

  *   *   *   *   *   *

6. *Unsecured Claims:*

After dividends to other claim holders pursuant to the Plan, Trustee shall pay dividends pro-rate [sic] on allowed unsecured claims. Over the term of the Plan, unsecured creditors shall be paid the sum of $132,932.00 which sum is not less than the amount which would be paid on such claims if the estate of the Debtors was liquidated under Chapter 7 of Title 11, U.S.C. on the date Debtors' Petition was filed. Interest shall be paid on these distributions at the rate of 8% per annum.

The order confirming debtors' amended Chapter 12 plan established the liquidation value to be distributed to unsecured creditors, i.e., the amount which would be paid to unsecured creditors if the estate of debtors had been liquidated on the effective date of the plan under Chapter 7 of the Bankruptcy Code, as $132,932.00. Exhibit A to that order provided for distributions of the $132,932.00 liquidation value, with interest at 8% per annum, to unsecured creditors, as follows:

| | |
|---|---|
| December 15, 1988 | $ 10,634.56 |
| December 15, 1989 | $ 40,134.94 |
| December 15, 1990 | $ 40,134.94 |
| December 15, 1991 | $ 40,134.94 |
| December 15, 1992 | $ 40,134.92 |

On April 11, 1988, prior to the filing of the amended plan and to the entry of the order confirming that plan, the court awarded post-petition fees and expenses in the aggregate amount of $15,439.95 to counsel for debtors. That amount was later paid, $10,000.00 from a pre-petition retainer received and held by counsel, $1,770.86 by the Trustee, and $3,669.09 directly by debtors. Thereafter, fees and expenses were awarded to counsel, and paid by the Trustee, as follows: January 2, 1990, $9,640.79; June 4, 1990, $1,157.70; and November 12, 1991, $1,272.39.

## THE UNSECURED CREDITOR'S MOTION

On April 14, 1992, Kingfisher Bank and Trust Company ("KB & T"), an unsecured creditor which asserts that it holds more than 90% of all debtors' unsecured debt, filed its motion seeking an order requiring the Trustee to account for payments to unsecured creditors.

In the motion, KB & T asserts that the Trustee has paid debtors' attorney's fees totalling $27,510.83 from amounts that should have been paid to unsecured creditors, with no notice having been given to the unsecured creditors that such was contemplated. It is also asserted that the payments to debtors' attorney has reduced distributions to unsecured creditors by the amount of those payments and that the distributions have been further reduced by the Trustee's deduction of Chapter 12 Trustee fees.

KB & T asserts that the post-confirmation attorney fees, and the Chapter 12 Trustee fees assessed thereon, would not have been incurred had debtors' bankruptcy estate been liquidated under Chapter 7 on the effective date of the plan, April 18, 1988. KB & T concedes that the pre-confirmation attorney fees in the amount of $15,439.95 "would have been appropriately deducted from distributions to unsecured creditors as an administrative expense priority."

KB & T next asserts that while it believes that debtors have made their annual payments to the Trustee, distributions to unsecured creditors have not been made

until "almost six (6) months after" the payments were received by the Trustee.

KB & T urges the court to determine that the payment of post-confirmation attorney fees from amounts distributable to unsecured creditors is improper and unauthorized under the plan, that the Trustee be directed to request reimbursement to the estate from debtors' counsel to the extent that payments have previously been made on account of post-confirmation attorney fees, and that the Trustee be ordered to account for and reimburse the estate for all Trustee fees deducted from the liquidation dividend payable under the plan.

Finally, KB & T requests the court to direct the Trustee to make distributions to unsecured creditors expeditiously or to account for interest which should have been earned on such funds after a reasonable time has elapsed for distribution of such funds to unsecured creditors.

## THE TRUSTEE'S RESPONSE

On April 30, 1992, the Trustee filed his response to KB & T's motion. After referring to the schedule of contemplated liquidation value distributions set out above, the Trustee asserts that, to the date of the response, debtors had paid $87,338.22 to the Trustee "in partial satisfaction of their liquidation value obligation under their plan. *See* Exhibit 1." [2]

The Trustee next itemizes $78,507.74 paid by him "to unsecured creditors, including administrative and priority claimants." That amount includes the four payments to the attorney for debtors, described above, totalling $13,841.74, and a $5.00 payment to the clerk of this court. In addition, the Trustee lists payments, on June 5, 1989, February 13, 1990 and July 11, 1991, to

Metropolitan Life Insurance ("Met Life") and KB & T. Although the payments are each in different amounts, and although the percentage of the total paid to each is different in each instance, the court assumes these payments to be in connection with the schedule of liquidation value distributions contained in the exhibit to the confirmation order. The payments to Met Life and KB & T aggregate $64,661.00.

The Trustee states that the balance of the $87,338.22, $8,830.48, was retained by him as his statutory fee.[3] The Trustee then notes that he has given debtors credit against their liquidation value obligation for their direct payment of $3,669.09 to their attorney, as discussed above. Thus, according to the Trustee, as of April 30, 1992, a total of $82,176.83 had been paid to unsecured creditors, and the Trustee was holding an additional $40,232.69 for distribution to unsecured creditors, exclusive of trustee fees.

Having provided the confused and confusing recitation summarized above, the Trustee, in his response, moves on to the legal issues presented by KB & T's motion.

First, it is asserted that, while the resolution of whether all of the liquidation value determined by the court to exist on the date of confirmation must be distributed to unsecured creditors whose claims existed on that date, and is therefore not available for the payment of post-confirmation attorney fees, "would make for an interesting legal argument, that is not the case before the Court." Such is the case, continues the Trustee, because the plan itself provides that such fees are to be paid before any dividend is paid to unsecured creditors.[4]

---

**2.** Exhibit 1 to the Trustee's response is a chronological schedule of receipts and disbursements of the Trustee in connection with debtors' case, consisting of seven pages of small print, from which this court is apparently expected, without assistance of any kind, to extract the various applicable payments and to verify the stated total. In this court's view, this would be impossible, even with divine guidance.

**3.** In a footnote, the Trustee advises that the statutory fee percentage changed several times

during the pendency of the case and that the dollar amount shown did not correspond to an even percentage. It is noted, however, that the amount retained is 10.11% of the amount said to have been paid to the Trustee, while the maximum percentage fee allowed the Trustee under 28 U.S.C. § 586(e)(1) is 10%.

**4.** See ¶ 1, Administrative Claims, and ¶ 6, Unsecured Claims, *infra*.

The Trustee contends that there is no distinction, and should be none, between pre-confirmation and post-confirmation administrative claims, and that the plan itself and the applicable provisions of the Bankruptcy Code require that all such claims be paid ahead of dividends to unsecured creditors.[5]

With regard to KB & T's contention that the Trustee used funds attributable to liquidation value distribution to pay his trustee fees, the Trustee first agrees that trustee fees are to be paid in addition to, and not out of, amounts intended for liquidation value distributions. Trustee then asserts that when funds paid to him are deficient to make required payments and the associated trustee fee, he distributes funds on hand after deducting the appropriate fee "rather than holding up the distribution while waiting on debtor to remit past due trustee fees."

As to the alleged delays before the Trustee makes distributions to unsecured creditors, the Trustee provides a lengthy defense, involving the time required to object to claims, to determine the unsecured portion of "split" claims, delays occasioned by the insufficiency of funds paid in by debtors, and the like.

### SUBSEQUENT EVENTS

The motion of KB & T was set on this court's June 9, 1992 motion docket, but on that date, it was stricken by agreement of all parties, to be reset by further order of the court. On December 22, 1992, the motion was again set for hearing, on this court's January 12, 1993 motion docket.

On December 29, 1992, the Trustee filed his notice of proposed distribution of funds to unsecured claimants, in which he discloses that he is holding $92,622.63, representing payments by debtors on the liquidation value installments required by the amended plan. The Trustee acknowledges the disputes with KB & T regarding the Trustee's payment of attorney fees out of liquidation value funds, and proposes to withhold $23,028.26, said to be an amount equal to the fees in dispute and the trustee fee on that amount,[6] and to distribute the balance of $69,594.37, $62,634.94 to Met Life and KB & T and $6,959.43 in payment of the trustee fee on the $69,594.37.[7]

On December 30, 1992, KB & T responded to the Trustee's notice of proposed distribution, objecting to the retention of the $17,510.83 in attorney fees previously paid, but agreeing that the $3,214.60 which had not yet been awarded or paid should be retained.

On January 12, 1993, a hearing was held before this court, at the conclusion of which the matter was taken under advisement. Although counsel for the parties, at the hearing, declined the court's invitation to submit additional arguments and authorities, counsel for the Trustee, on January 15, 1993, nevertheless submitted a seven-page supplemental response to KB & T's motion. Mercifully, KB & T has not chosen to reply.

Early in the supplemental response, counsel for the Trustee makes the following assertion:

> The plan in this case provided that attorney fees allowed by the Court would be paid out of liquidation value. [Counsel for KB & T] argued that that provision was at odds with the plan provision providing for payment of a fixed amount of liquidation value to unsecured creditors. Undersigned counsel argued that the unsecured creditors include priority claimants whose claims arise in the course of the Chapter 12 case.

---

5. For purposes of this order, it is not necessary to recite the balance of the Trustee's lengthy treatise on the priority of administrative claims over unsecured claims.

6. The fees in dispute included not only those previously paid by the Trustee, as described above, but a then pending application by debtor's then counsel for $3,214.60.

7. The proposed Trustee fee equals 11.11111% of the amount distributed. This court has recently held that the "interpretation" authorizing a 10% fee on each 10% fee, etc., and resulting in an aggregate fee of 11.11111% of the actual payment is beyond the statutory authority conferred by 28 U.S.C. § 586(e), and therefore impermissible. See In re BDT Farms, Inc., 150 B.R. 795 (Bankr.W.D.Okla.1993).

There follows a lengthy dissertation which can be summarized by simply saying that, at the time of plan confirmation, the court has no way of knowing exactly what administrative costs may be incurred or, for that matter, the allowed amount of all secured and unsecured claims. Counsel advises the court of the Trustee's methodology in determining liquidation value and notes that the Trustee took no part in negotiations reported to the court by counsel for KB & T, pursuant to which the liquidation value in this case was fixed prior to confirmation. Finally, counsel for the Trustee urges that the court make no decision until it has taken evidence "respecting whether the previous determination of liquidation value in this case includes a deduction of anticipated attorney fees of debtors' counsel."

## DISCUSSION

It seems to this court that both KB & T and the Trustee have completely missed the point. In the case of KB & T, this may be due to its efforts to obtain some kind of relief, even if only half a loaf. In the case of the Trustee, the basis for his untenable position is more obscure.

What the Trustee appears to have forgotten is that he is required to make the payments provided for under the provisions of a confirmed plan. Under § 1221, the debtor, not the Trustee, proposes a plan. The debtor, not the Trustee, is responsible for obtaining confirmation of the plan.

Insofar as is material to the issues before this court at this time, the most important requirements which must be met in order to obtain confirmation of the plan are those contained in § 1225(a)(4) and § 1225(a)(6).

■ Under § 1225(a)(4), "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." This provision is commonly referred to as the "best interest of creditors test," and simply prevents the holder

of an allowed unsecured claim to be provided treatment under a rehabilitative plan less favorable than would have been afforded him in the event of an immediate liquidation under "straight bankruptcy." Thus, to the extent that a Chapter 12 debtor possesses unencumbered, non-exempt property which in a Chapter 7 case would be liquidated with the proceeds paid to unsecured creditors, the Chapter 12 plan must provide at least the same amount to unsecured creditors, with interest in order to account for the delay in payment.

■ Under § 1225(a)(6), debtor must establish his ability to make all payments under the plan, and to otherwise comply with the plan. This is commonly referred to as the feasibility test.

In this case, debtor proposed a plan which, over its five-year term, provided $132,932 plus interest at 8% per annum to unsecured creditors in five liquidation value distributions, as set out above. Having conceded that the unsecured creditors would have received $132,932 had debtors' estate been liquidated on the effective date of the plan, debtors were required to provide that amount, with interest at a market rate until payment, to their unsecured creditors. Debtors did so. Then, in order to obtain confirmation of the plan, debtors were then required to establish the likelihood that they would be able to make all payments under the plan. They did this as well.

■ In this court's opinion, neither the confirmed amended plan nor any provision of the Bankruptcy Code, relieves debtors from making the payments called for by their plan. Similarly, nothing therein relieves the Trustee from his obligation to apply those payments as contemplated by the plan when they are received. Simply stated, the unsecured creditors, who have no collateral security, but only the plan and the provisions of the Code to protect them, are absolutely entitled to the amounts provided for them in the plan. Debtors may not avoid making the required payments, and the Trustee may not avoid distributing them to the unsecured creditors holding the

claims making up the amounts for which the plan provides.[8]

■ There is no authority for the Trustee to pay administrative claims, whether arising before or after confirmation, out of the liquidation value distributions.[9]

■ As the Trustee points out, the amended plan requires that claims for professional fees approved by the court be paid before any dividend is paid to unsecured creditors. The plan, however, does not, contrary to the Trustee's subsequent contention, require or permit such fees to be paid *out of,* or *instead of,* any part of the liquidation value.[10]

In many, if not most Chapter 12 cases, there is little or no liquidation value. In those cases, little or no mandatory dividend to unsecured creditors must be provided for by debtor's plan in order to meet the best interest of creditors test. In those cases, administrative expenses, such as attorney fees, must be provided for by debtor. If debtor is unable to establish that he will be able to pay all amounts required by the plan, including administrative expenses, trustee fees and the like which may be reasonably incurred, his plan may not be confirmed.

Under the Trustee's self-described "policy," so long as there is a liquidation value provided for in the plan, any and all administrative expenses may simply be paid *out of* that amount, with the unsecured creditors who were entitled to distributions being required to accept that much less than the plan provided for them. Under this interpretation, debtor and debtor's counsel have no incentive whatever to minimize administrative expenses, and in fact may be encouraged to litigate all issues, however frivolous or inconsequential, since the costs of such litigation, once awarded by the court, would in effect, and in reality, be borne not by the debtor but by the unsuspecting unsecured creditors.[11]

The court uses the word "unsuspecting" because nothing in the code or in the plan would alert unsecured creditors protected by the best interest of creditors test to the possibility that the specific distribution provided for them by the confirmed plan would be subject to reduction, to the point of elimination, for any and all allowed administrative claims, whenever incurred. Nothing in the attorney's applications for compensation and reimbursement of expenses or in the notices of hearing thereon indicated that the source of funds to satisfy any award made by the court would be the liquidation value distribution to unsecured creditors required by the confirmed plan.

Similarly, the court was at no time advised that the Trustee intended to pay fees

8. The Trustee, upon determining that he would be unable to make payments specifically required by the confirmed plan, for whatever reason, should immediately seek guidance from the court, in the form of a modification of the plan or otherwise. He should not unilaterally work an unauthorized modification by diverting funds in his possession to other purposes.

9. KB & T's concession that pre-confirmation attorney fees "would have been appropriately deducted from distributions to unsecured creditors as an administrative expense priority" is, in this court's opinion, a concession which is neither required nor justified by the Code, in the absence of a specific provision in the confirmed plan designating those fees a part of the unsecured claims entitled to protection under the best interest of creditors test. While computation of the required amount of liquidation value distributions must take into consideration liquidation costs, they would not necessarily include the fees of reorganization counsel, which would include services not required of or rendered by

or properly awardable to counsel in a liquidation context. It is assumed that the negotiations between debtors and their unsecured creditors, which resulted in the $132,932 provided for in debtors' plan, included consideration of appropriate liquidation costs.

10. It should be made clear that the issue before the court has to do only with amounts provided for unsecured creditors in order to meet the best interest of creditors test. A different result might well be reached if the Trustee had paid administrative expenses out of disposable income, which is dealt with under § 1225(b). Disposable income was not present in this case.

11. This court does not intend to imply any such motivation in this case, on the part of debtors or of their counsel. The fees and expenses of counsel have been in each instance found to be reasonably and necessarily incurred and expended, and this court sees no reason to revisit those determinations.

and expenses awarded by the court from funds intended for the liquidation value distributions. Nor can the court have been expected to anticipate that such would be the case, from the plan, from the statements of counsel, or from the provisions of the code.

Not until the debtors apparently had made all payments required by the plan did it become clear that the Trustee, through the application of his "policy," had applied all administrative expense payments, including one payment made directly by debtors to their attorney, against the amounts required by the plan to be distributed to unsecured creditors.[12]

The Trustee's stated justification for his "policy" is that attorney fees and other administrative expenses are in fact unsecured claims, and that since they also have priority, they should be paid first, out of the funds required to be paid to unsecured creditors in compliance with the best interest of creditors test. In this court's view, this explanation has all the facile certitude of the syllogism, but is both disingenuous and specious.

Administrative claims are not the same as the claims of unsecured creditors entitled to protection under the best interest of creditors test, and nothing in the Code, in debtors' amended plan or in the order confirming that plan, supports a contrary conclusion.[13]

## CONCLUSION

The record before this court is such that it is impossible for the court to ascertain whether debtors have made all payments

required of them by their amended plan, and by the order confirming the plan.

According to the Trustee's response to KB & T's motion, as of April 30, 1992, a total of $64,661.00 had been paid to Met Life and KB & T, the two unsecured creditors entitled to liquidation value distributions in order for the plan to comply with the best interest of creditors test. According to the exhibit to the order confirming debtors' amended plan, debtors were required to make five payments to the Trustee aggregating $171,174.30 over the life of the plan, in order to fund the required liquidation value distributions, with interest at 8% per annum. The last such payment was to be made on December 15, 1992.

Met Life and KB & T are entitled to $132,932, plus interest from the effective date of the plan, April 18, 1988, at the plan rate of 8% per annum, until the full amount has been paid. The Trustee will be directed to compute the amount to which those creditors are presently entitled, in principal and interest, and to forthwith pay to such creditors, pro rata, from the funds presently held by the Trustee, so much of the amount presently owed as may be paid from such funds, after provision for the appropriate percentage fee.[14]

In recognition of the fact that debtors are ultimately responsible for funding the Chapter 12 proceeding, including their plan and all reasonable and necessary administrative costs as well, the court must hold debtors responsible for the fees and expenses awarded to debtors' counsel, and for any other administrative expenses paid

12. It is assumed that all payments required of debtors by the plan have been made. The record, however, does not contain specific support for that assumption.

13. This court is not required to, and does not, address the question of whether it would be permissible, even if specified, to provide for the reduction of amounts reserved to comply with the best interest of creditors test in order to pay post-confirmation administrative claims. It would appear that any reduction of those amounts, for any purpose, would violate the rights of the creditors under the test, and would result in the inability of debtors to obtain confirmation of their plan.

14. The percentage fee should be determined, not by applying the appropriate percentage, assumed to be 10% to the total amount available, taking the result as the fee and distributing the balance to the creditors, but by first dividing the total amount available by 1.1, the result being the amount of the payment to be made to the creditors, and the balance to be retained as the percentage fee. For example, if the total amount held by the Trustee is, as set out in his notice of proposed distribution, $92,622.63, the amount payable to the creditors would be $84,-202.39 and the amount retained as the percentage fee would be $8,420.24.

by the Trustee out of liquidation value distribution funds.

Debtors will be directed to pay to the Trustee, at the earliest possible date, the following: (1) an amount sufficient to complete the required liquidation value distribution to Met Life and KB & T, with interest at 8% per annum to date of payment, plus 10% of any such amount, representing the trustee's percentage fee; and (2) the fees and reimbursement of expenses awarded by the court to debtors' present counsel but not yet paid, in the amount of $3,214.60, plus $321.46 representing the trustee's percentage fee on such payment, for a total of $3,536.06.[15]

Upon payment by debtors of the foregoing amounts, the Trustee is directed to forthwith complete the required payment of the liquidation value to the unsecured creditors, with interest, and to make payment to debtors' present counsel for the fees and expenses awarded by the court. Should any payment by debtors be insufficient to permit payment in full of the obligations remaining to be paid, the Trustee shall determine the amount of the payment which can be made with the funds available, leaving sufficient funds for the applicable percentage trustee fee,[16] and shall make the appropriate payment at the earliest possible date. In no event shall any amount be paid to present counsel until the liquidation value has been paid in full, with interest, to Met Life and KB & T.

As soon as is practicable after debtors have made all payments to the Trustee required hereby and after the Trustee has completed all disbursements required hereby to unsecured creditors and administrative claimants, the Trustee shall promptly

take any and all actions required in order to close this case. No discharge shall be issued to debtors until such time as their obligations hereunder have been satisfied in full.[17]

IT IS SO ORDERED.

---

**15.** Should the percentage fee in effect at the date of any payment required hereby be less than 10%, the appropriate fee shall be computed at the lesser rate. The court notes that Chapter 12 debtors and counsel in other cases have complained in the past about the "moving target" aspect of the percentage fee computations. The percentage fee rate was changed rather frequently during the early Chapter 12 years. Since, however, the rate is presently at the maximum allowable percentage, it is assumed that no party will object to this court not addressing whether it would be more appropriate to fix the percentage rate for the duration of the plan at the time of confirmation.

**16.** Computed as set out in footnote 14, *supra.*

**17.** This court observes that much of the controversy which arose in this case could have been avoided had the debtors' plan clearly spelled out debtor's responsibility for the payment of administrative expenses, making it clear that such expenses are not the responsibility of unsecured creditors, and for the payment of the percentage fee on plan payments.