**In re Dr. Edward J. NEILL and Maria Cristina Neill, Debtors.**

**Bankruptcy No. 98–30637.**

United States Bankruptcy Court,
D. North Dakota.

Dec. 3, 1999.

Roger J. Minch, Fargo, ND, for debtors.

Lowell Bottrell, Fargo, ND, for trustee.

Kip M. Kaler, Fargo, ND, trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Presently before the court for consideration are the Trustee's Final Report and Proposed Distribution filed October 20, 1999, and an Application for Final Compensation filed by the Trustee, Kip M. Kaler ("Kaler"), on November 9, 1999. Also under consideration is a separate Application for Final Compensation filed by Gerald Halvorson, a sales agent employed by the Trustee and also filed on November 9, 1999. The Debtors object to the Trustee's final report raising particular concerns with respect to fees sought both by the Trustee and the sales agent. By his final report, as detailed in his Application for Final Compensation, Kaler as Trustee, seeks compensation of $10,374.13 which is the maximum available under section 326 of the Bankruptcy Code. He also requests expenses of $300.00. As attorney for the estate he also, by separate application, requests an additional $1,075.00. No objection to the attorney's fee request has been made and thus will not be discussed further. As for the trustee fees, however, the Debtors charge that Kaler's application must satisfy, with particularity, the requirements of section 330 of the Code and that under the strictures of section 330(a)(1), the compensation requested is excessive and unsupported by the facts. Additionally, the Debtors assert that the standard form Trustee's Final Report and Proposed Distribution is completely deficient in providing either the necessary notice or requisite information by which an interested party may lay challenge to a trustee's compensation request. Similar concerns are raised as regards the sales agent's request for commissions of $4,500.00.

The matter came on for hearing on November 23, 1999.

### 1.

### Trustee's Compensation

Kip M. Kaler, the duly appointed trustee in this Chapter 7 case, has served as a Chapter 7 trustee since 1994 and has, over the ensuing years, handled numerous cases consistent with the duties prescribed by section 704 of the Bankruptcy Code.

Typically, when a case comes into his office, Kaler gets a copy of the petition, statement of affairs and schedules, making notes on anything that appears amiss or might require further information. In the instant case, commenced by a petition filed April 17, 1998, the petition revealed the IRS as the principal unsecured creditor with a claim of over $111,000.00. Investigation caused Kaler to conclude there to have been improper transfers of property and nondisclosures of property. His concerns were voiced both to the IRS and to the Debtors with the Debtors immediately hiring an accountant who promptly provided Kaler with all information including documents and anything else pertaining to their assets and the perceived transfers. Through assistance of their counsel, the Debtors reached a detailed settlement with Kaler and the IRS on July 23, 1999, by which the Debtors admitted to having made various property transfers to their children, that they consumed certain non-exempt assets, and that the IRS had a lien on virtually all their real and personal property. In exchange for surrendering

various items of property to the estate including a house, retirement accounts, investment accounts, and bank accounts, Kaler agreed not to pursue a section 727 action for nondischarge. He thereafter arranged for sale of the house and made application for employment of Gerald Halvorson "as an appraiser" for compensation of six percent of the selling price. Halvorson's appointment was approved by the court and the house was sold with an Order entered on September 2, 1998, approving the sale and authorizing, as part of the distribution of the proceeds, payment of Halvorson's six percent commission.

On October 20, 1999, Kaler filed the Trustee's Final Report and Proposed Distribution which is a two-page standardized form reciting in conclusionary form, "the maximum allowable trustee compensation as $10,374.13" plus $300.00 for reimbursement of final expenses. No detailed itemization of the work performed by the trustee accompanied the final report. Upon filing, the Clerk of the United States Bankruptcy Court, pursuant to Rule 2002(f) of the Federal Rules of Bankruptcy Procedure, gave the Debtors and all other interested parties notice by mail establishing a twenty-day objection period. This notice, as with the report itself, contains no detail as to the basis of the trustee's requested compensation.

In the case at bar, prompted in part by the Debtors' objection, Kaler and Halvorson supplemented the Trustee's Final Report with separate applications for final compensation as before noted. The application for final compensation submitted by the Trustee again requests compensation "pursuant to section 326," restating the maximum permissible amount to be $10,374.13.

While conceding he did not keep time records and that he is not able to accurately assess the amount of time spent on the case by other personnel in his office, Kaler reconstructed the time records from filed documents and came up with total hours of 46.80 for himself and 1.1 hours for his legal assistant. No reconstruction of expenses was made because, according to his testimony, the $300 is not representative of actual costs for a particular case, but rather is just a standard charge Kaler makes in each case.

2.

### Gerald Halvorson

Gerald Halvorson, while having no particular training in real estate and not possessed of a real estate license, has done work for various trustees for the past seven years. He has also sold property for several banks and his training in the area of asset disposal has come primarily from simply doing the job. By application filed July 6 and approved by the United States Trustee, Halvorson was employed by the estate to sell certain real property for commission of six percent of the sale price including all advertising costs and miscellaneous costs essential to preparing the property for sale. The Order was entered on July 7, 1998, approving his employment subject to section 328 of the Code. The property was sold and the trustee filed a notice and motion to sell real estate. In part of the motion he requested permission to distribute $4,500.00 to Halvorson as his fee. The motion was duly noticed to all parties in interest including the Debtors and as no objection was made, an Order approving the sale and distribution was entered on September 2, 1999.

3.

### Discussion

■ The starting point for discussing trustee's fees is section 330 of the Bankruptcy Code. A request for compensation by either a Chapter 7 or Chapter 11 trustee must be based upon section 330(a)(1) which provides:

**Section 330. Compensation of officers.**

(a)(1) After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional per-

son employed under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

■ Section 326, cited by Kaler as authority for his compensation requests of $10,374.13, does not set forth any standards by which compensation may be determined. Indeed, the section itself says the court "may allow reasonable compensation under section 330." The percentage allowance as set out in section 326 does nothing more than place a ceiling on the amount that can be awarded under section 330. Courts are uniform in concluding that section 330 is the exclusive basis for arriving at what is reasonable compensation for a trustee's actual and necessary services.[1] *In re Fischer*, 210 B.R. 467 (Bankr.D.Minn.1997); *In re Marvel Entertainment Group, Inc.*, 234 B.R. 21 (D.Del. 1999).

Kaler argues that as regards trustee compensation, "reasonableness" should be gauged upon all relevant factors including results obtained. While not stating it in so many words, Kaler, by relying upon section 326 without reference to section 330, apparently would have section 326 given special reference as a component in the "reasonableness" equation. In the case of *In re Guyana Development Corp.*, 201 B.R. 462, 480 (Bankr.S.D.Tex.1996), the court allowed that given the function served by trustees, their compensation may be calculated by a combination of the "reasonableness" approach and a "results-oriented" sliding-scale percentage of the

funds approach. This court can find absolutely no basis at all in the Code for such an approach to trustees' compensation and the analysis promoted by *Guyana* has been met with recent criticism. Indeed, the *Guyana* court itself observed that section 326 is not an entitlement but merely a ceiling. This is further evident from the House Report on section 326(a) which provides the section—

"simply fixes the maximum compensation of a trustee ..., the maximum limits have tended to become minimums in many cases. This section is not intended to be so interpreted. The limits in this section, together with the limitations found in section 330, are to be applied as outer limits, and *not as grants or entitlements to the maximum fees specified.*"

H.R.Rep. No. 545, 95th Cong. 1st Sess. 327 (1977); *see* S.Rep. No. 989, 95th Cong., 2nd Sess. 37–38 (1978). (emphasis supplied).

■ In *Marvel Entertainment, supra,* the court, in discussing the sliding-scale approach of *Guyana,* said it could find no principled relationship between the amounts disbursed and what would be reasonable compensation as the amount of the funds disbursed reveals little about the nature of the work performed or its value to the estate. 234 B.R. at 39. With this assessment, this court heartily concurs. Section 326(a) is to be regarded as nothing more than a cap on what Kaler's fees can be but is not regarded as an element in assessing what would be "reasonable" compensation. That assessment is made exclusively under section 330 wherein section 330(a)(3)(A) of the Bankruptcy Code defines by means of a nonexclusive list, what the term "reasonable compensation" includes. The relevant factors, derived from the lodestar approach first utilized in

---

1. Chapter 12 and 13 standing trustees' fees are not governed by section 326(a) taking the calculation out of section 330(a). Standing trustees under these chapters are regulated by 28 U.S.C. § 586(b) and the fees as thereby set are not reviewable by the courts. E.g., *Pelof-*

*sky v. Wallace,* 102 F.3d 350 (8th Cir.1996); *In re Turner,* 168 B.R. 882 (Bankr.W.D.Tex. 1994); *Matter of Ward,* 132 B.R. 417 (Bankr. D.Neb.1991); *In re BDT Farms, Inc.,* 150 B.R. 795 (Bankr.W.D.Okla.1993).

*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), are:

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

Recognizing that the foregoing is not an exclusive list, the court in *Marvel, supra,* found it useful to look at an objective market price standard in considering the value of the services provided by a trustee. There the court considered what services the trustee was expected to provide, what he actually did, and what would be reasonable compensation in the non-bankruptcy world for such services.

■■■ As with the fee application of any professional, the trustee, as applicant, bears the burden of proving the nature of the services performed, their necessity and their reasonableness. *In re Stoecker,* 118 B.R. 596, 601 (Bankr.N.D.Ill.1990); *In re Werth,* 32 B.R. 442, 444 (Bankr.D.Colo. 1983). As a trustee seeking fees under section 330, Kaler has no greater status than any other entity seeking compensation, his application for compensation must provide enough detail to allow the court to reach some conclusions regarding the relevant factors of section 330(a)(3). It would thus seem appropriate, keeping in mind the burden of proof, that the trustee's application set forth a detailed statement of the services rendered, the time expended, the expenses incurred, the amount requested, the rates charged for such services, how the services were necessary to the administration of or beneficial at the time rendered towards administration of the case, it should provide information relevant to a determination that the services were performed within a reasonable amount of time, commensurate with the complexity, importance and problems, issues, or tasks addressed. It should also contain an affirmation that the requested compensation is reasonable based upon the customary compensation charged by comparably skilled professionals in the non-bankruptcy market. Daily time sheets or a listing of daily time entries should be included containing an itemized listing of all services performed. It is inappropriate for a trustee, just as it would be for any other professional, to broadly lump services or group tasks together within a single block of time thereby expecting some automatic value to be placed upon them.

■■■ Here, Kaler's original Trustee's Final Report is completely deficient as it provides no information at all bearing upon the factors essential to a section 330(a)(3) determination. The supplemental application is an effort in the right direction but is itself nothing much beyond a reconstruction of the time spent. From that tabulation alone, the court cannot conclude that the requested compensation of $10,374.13 is reasonable. Nor was Kaler's hearing testimony illuminating in that regard. At best, as suggested by the Debtors' counsel, Kaler, as trustee, is entitled to be reimbursed for 46.8 hours of service. If a trustee expects the Trustee's Final Report and Proposed Distribution to serve as justification for his compensation request under section 330, then the final report must contain, perhaps by means of an appendix, all of the requisite information. Otherwise, the trustee will have to file and notice a separate fee application.

While a trustee's compensation may not in all cases be strictly governed by the enumerated factors set out in section 330(a)(3), and while there may be other

factors appropriate for consideration in a particular case, something more than conclusionary argument has to be made to convince the court that there are additional factors upon which to base compensation. As noted previously, the amount of the funds available for distribution is by itself meaningless to this calculation. In the case at bar we are left with the time spent and the hourly rate usually charged by Kaler as an attorney which, while not necessarily the measure of the rate to be charged by trustees, is in the instant case the only measure.

Accordingly, and in view of the foregoing discussion, the court will allow Kaler, as Trustee, compensation of $5,850.00 in recognition of the time spent and his hourly rate as an attorney. Without some particular itemization, costs will not be allowed as nothing in the Code provides for automatic costs to be assessed.

▇▇ Turning now to the Halvorson Application, it must be first observed that Halvorson is a professional employed by the estate and is therefore subject to the requirements of section 330 including justifying the necessity and reasonableness of his commission. The fee or compensation arrangement set out in the application itself is nothing more than a proposed arrangement for compensation and is by no means to be regarded as pre-approved. Rule 2014 Fed.R.Bankr.P. The Order subsequently entered on July 7, 1998, approved his employment "subject to section 328." That section allows the court to approve the employment of such persons on a proposed fee arrangement but any person so engaged must seek compensation consistent with section 330(a) which requires both notice and hearing. Commissions are not automatic just as fees for other professionals are not automatic.

▇▇ In this case, however, the property was sold consistent with Halvorson's terms of engagement and the Trustee in his Notice and Motion to Sell Real Estate proposed to make a distribution of appraised commission to Halvorson. The motion was duly noticed and no objection was made therefore the court approved the sale and payment of the commission to Halvorson. The arrangement with Halvorson can be distinguished from many other types of employment contracts as it was a contingency fee contract with the fee being earned once the service was performed without any particular regard to the factors bearing upon notions of reasonableness. From the employment application the court and interested parties knew what the agent was expected to do and what his commission was to be upon successful performance. From the Notice and Motion to Sell Real Estate, the court and interested parties knew what was being sold, what the terms were, and whether that performance was consistent with what had been earlier agreed upon in the employment application. From the Notice and Motion to Sell one could discern whether the proposed distribution of commissions was consistent with the terms of employment leaving little else to consider terms of whether to allow the payment of the commission or not. It does appear that Halvorson performed precisely in the manner expected and that he has earned the commission. Therefore, the amount of $4,500.00 representing six percent of the sale price is allowed as a sales commission.

### 4.

#### Conclusion

Kip M. Kaler, as Trustee for the estate, is allowed Trustee's fees in the sum of $5,850.00 without costs. Gerald Halvorson, as sales agent for the estate, is allowed a commission of $4,500.00. In all other respects the Trustee's Final Report and Proposed Distribution filed October 20, 1999, is approved.

**SO ORDERED.**