### In re Andrew Wyman SCHOLLETT and Laura Lynn Schollett, Debtors.

### Sharon A. DUNIVENT, Trustee, Appellant,

### v.

### Andrew Wyman SCHOLLETT and Laura Lynn Schollett, Appellees,

### United States of America, Amicus Curiae.

### No. 90–8049.

United States Court of Appeals, Tenth Circuit.

Nov. 25, 1992.

---

Russell M. Blood of Warnick & Blood, P.C., Casper, Wyo., for appellant.

Georg Jensen, Cheyenne, Wyo., for appellees.

Bruce G. Forrest, Attorney, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., and William Kanter, Atty., Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., and John E. Logan, Gen. Counsel, and Martha L. Davis, Attorney, Executive Office for U.S. Trustees, Dept. of Justice, Washington, D.C., with him on the brief), for amicus curiae U.S.

Before SEYMOUR, HOLLOWAY and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is an appeal from the district court's reversal of the bankruptcy court's order denying a request by the debtors, Andrew Wyman Schollett and Laura Lynn Schollett, for a reduction in fees owed to the standing bankruptcy trustee. The Scholletts argue that in light of the particular facts of their case the trustee's standing fee of ten percent was unreasonably high. The bankruptcy court refused to change the amount. On appeal, however, the district court agreed with the Scholletts' arguments and reduced the fee to 5%. Appeal was timely taken to this court by the trustee.

I

The debtors Andrew and Lynn Schollett filed a Chapter 12 (family farm) reorganization plan with the bankruptcy court for the District of Wyoming on April 15, 1987. After a series of negotiations with creditors the bankruptcy court confirmed the Scholletts' plan on June 26, 1987. Under the plan the Scholletts were required to make five annual payments of approximately $30,000. This money would be paid to the trustee, Sharon Dunivent, who would in turn pay the appropriate amounts to the various creditors.

The Scholletts made their first payment to the trustee on August 4, 1988. Dunivent, however, refused to remit any of the funds to the creditors because the Scholletts had failed to pay her an additional ten percent for trustees fees. One of the Scholletts' creditors, John Deere Co., then filed a motion seeking authority to repossess and to foreclose on the Scholletts. On September 23, 1988 the bankruptcy court issued an order confirming the Scholletts' obligation to pay to Ms. Dunivent a fee of ten percent for each payment owed under the plan "not withstanding any language in the plan or order to the contrary."

On appeal to the district court, the Scholletts argued that the trustee's duties in their case involved nothing more than writing seven checks and would take at most fifteen hours over five years. For this effort Dunivent would receive $15,000, an amount the Scholletts consider clearly unreasonable under the circumstances. Dunivent argued below, as she does here, that the statutory scheme which set up the United States Trustee System removed authority from the courts to review trustees' fees. The district court disagreed.

The judge's order said that under the repealed provisions of 11 U.S.C. § 1202(c), the bankruptcy court was charged with appointing trustees and determining their compensation. Before passage of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, 100 Stat. 3088 (1986), most courts held that a reviewing court retained power to review the trustee's fee on request in individual cases and make downward adjustments where warranted. While 11 U.S.C. § 326(b) and related sections such as § 586 make it clear that the bankruptcy court no longer has authority to appoint standing trustees, the district judge said he could not ascertain that any of the amended provisions, including § 326(b), prevent judicial review of trustee compensation. He pointed out that the normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific, and that the Supreme Court had stated it has followed this rule with particular care in construing the scope of bankruptcy codifications, citing *Midatlantic National Bank of New Jersey v. Dep't of Environmental Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986). Thus the district judge concluded that the power to review trustees' fees for reasonableness had not been stripped from the courts. I R.Doc. 10, at 4–6.

The district judge found that the fixed fee of ten percent here was excessive and reduced it to five percent, and remanded the case to the bankruptcy court for entry of an order adjusting the standing trustee's fees in accordance with the district court's order. This appeal followed.[1]

## II

The question whether a court has the power to review an Executive Branch determination of the fees of a standing bankruptcy trustee is one of law. Accordingly we review this decision of the district court de novo. *United States v. Maher*, 919 F.2d 1482, 1485 (10th Cir.1990). More specifically, the central question presented by this appeal is whether the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, which generally took the power to appoint trustees away from the bankruptcy courts and placed it in the hands of the United States Trustee, also removed the power of the court to review the fees set by the Attorney General for standing bankruptcy trustees. Before addressing this question some history of the statute is necessary as background.

Prior to the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (1978), the bankruptcy courts handled both the judicial and the administrative functions in bankruptcy. Thus in addition to their traditional judicial function of ruling on disputed matters in adversary proceedings, the bankruptcy courts organized and scheduled meetings of creditors, set up creditors' committees, appointed trustees, and set trustees' fees. In Congress' view this lack of separation of functions eroded public confidence in bankruptcy proceedings and burdened judges with unnecessary administrative obligations. H.Rep. No. 764, 99th Cong. 2nd Sess. 17–18, *reprinted in* 1986 U.S.C.C.A.N. 5227, 5230. Congress therefore implemented a pilot program in a limited number of judicial districts which transferred the administrative bankruptcy functions to United States Trustees appointed by the Attorney General.

---

1. On appeal to this court the United States of America requested and received leave to file a brief *amicus curiae* and was permitted to present argument on the appeal.

Included among a United States Trustee's functions was the task of appointing individuals to serve as private trustees in Chapter 7 and Chapter 13 proceedings and, where appropriate, of appointing a standing trustee for all Chapter 13 cases in a given district. *Id.* The pilot program was generally considered a success and the 1986 Act therefore provided for its phase-in nationwide. *Id.* at 19. The Act also created a new bankruptcy chapter for family farmers, Chapter 12, which was closely modeled on the existing Chapter 13. 5 L. King, *Collier on Bankruptcy* ¶ 1200.01 (1988). It was under this chapter that the Scholletts filed for protection.

Under the Act certain districts were immediately certified by the Attorney General as ready for the implementation of the United States Trustee System. Other districts, such as the District of Wyoming, were not. Therefore the responsibility for determining whether to appoint a standing trustee for the newly created Chapter 12 class of bankruptcies in uncertified districts fell to the district courts. Pub.L. No. 99–554, 100 Stat. 3119, § 302(c)(3)(B)(i) and (ii). On November 11, 1986, the day the Act took effect, the bankruptcy judge appointed Sharon Dunivent as standing trustee for all Chapter 12 cases in Wyoming. He also provided that she would, subject to certain statutory limitations, receive a fee not to exceed ten percent of the payments made under confirmed plans. It was under this system that the Scholletts' case was filed.

After the Scholletts' plan was confirmed, the Attorney General certified Wyoming for participation in the United States Trustee System. Once the District was certified, the duty of determining the need for a standing trustee shifted to the United States Trustee. The United States Trustee agreed with the bankruptcy judge's earlier conclusion that a standing trustee was necessary in Wyoming. Sharon Dunivent was promptly reappointed as standing trustee on August 31, 1987, with a fee of ten percent as fixed by the Attorney General. The first payment under the Scholletts' plan was made one year later.[2]

### III

■ The appellant, Trustee Dunivent, argues, *inter alia*, that 11 U.S.C. § 326(b) prohibits review by the courts of compensation properly set for a standing trustee in a Chapter 12 proceeding. The amicus says the standing trustee's fee is properly set by the Attorney General after consultation with the United States Trustee under 28 U.S.C. § 586(e) and should not be subjected to post-hoc adjustment by the courts based on perceived equities in a particular case.

The appellees maintain that this case involves the inherent ability of the court to administer and control cases before it; that the amendments to the Bankruptcy Code creating Chapter 12 reflected awareness of the plight of the family farmer; that the amendments made some preferences in treatment of family farmers; that it would be totally against legislative intent to afford family farmers small advantages over other debtors, and at the same time to add a lump-sum, nondiscretionary surcharge of ten percent to their debt service requirements; and that increased trustee compensation could risk the destruction of an otherwise viable opportunity for reorganization, citing *In re Kline*, 94 B.R. 557 (Bankr. N.D.Ind.1988). We disagree and accordingly reverse the district court's order.[3]

**2.** The appellants contend that the relevant fee in this case is the original one set by the bankruptcy court because the District of Wyoming had not been certified at the time the case was filed. However, the statute makes clear that 270 days after the effective date of the Act or 30 days after certification, which ever is sooner, all pending cases become governed by the provisions of the new statute. § 302(d)(1)(ii). The payment involved here took place over a year after certification and nearly two years after the Act took effect. Accordingly, the relevant fee is that set by the Attorney General. Indeed, the bankruptcy court's order confirmed that the United States Trustee's rate of ten percent was to prevail, anything in the plan to the contrary notwithstanding.

**3.** Because of this conclusion we need not reach the Trustee's other argument that the district court based its determination of reasonableness on information not properly before the court.

The system for compensating standing trustees is fairly complex. First, in cases under Chapter 12 (like this one) or Chapter 13, 11 U.S.C. § 326(b) denies the bankruptcy court the power to allow compensation for a United States. Trustee acting as a case-by-case trustee or for a standing trustee appointed under 28 U.S.C. § 586(b). The remainder of § 326(b) permits bankruptcy court allowance of reasonable compensation to private case-by-case trustees appointed in Chapter 12 or 13 cases.[4] Section 586(e) of title 28 provides affirmatively who does determine compensation of standing trustees—the Attorney General, in consultation with the United States Trustee who has appointed an individual as standing trustee.[5] The Executive Branch thus fixes a percentage fee for the standing trustee to receive, not to exceed ten percent of payments made under a plan subject to a maximum aggregate amount of payments

of $450,000. For plan payments in excess of $450,000 the percentage rate is three percent. These fees are subject to a maximum annual rate of compensation based on the basic pay for level V employees on the executive schedule. Fees in excess of this maximum amount are used to fund the operation of the United States Trustee System. The question presented is whether this statutory scheme provides for judicial review of the fees thus set, or whether it precludes judicial review.

Of course, our first and primary guide is the plain language of the statutes. Nowhere do they explicitly forbid judicial review of trustee's fees, but their general wording and structure militate against such review. The clear and categorical language committing the setting of fees to the Attorney General does not suggest an oversight function for the courts. *In re*

---

4. 28 U.S.C. § 326(b) provides:

   (b) In a case under chapter 12 or 13 of this title, the court may not allow compensation for services or reimbursement of expenses of the United States trustee or of a standing trustee appointed under section 586(b) of title 28, but may allow reasonable compensation under section 330 of this title of a trustee appointed under section 1202(a) or 1302(a) of this title for the trustee's services, payable after the trustee renders such services, not to exceed five percent upon all payments under the plan.

5. 28 U.S.C. 586(e) provides:

   (e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix—
   (A) a maximum annual compensation for such individual consisting of—
   (i) an amount not to exceed the highest annual rate of basic pay in effect for level V of the Executive Schedule; and
   (ii) the cash value of employment benefits comparable to the employment benefits provided by the United States to individuals who are employed by the United States at the same rate of basic pay to perform similar services during the same period of time; and
   (B) a percentage fee not to exceed—
   (i) in the case of a debtor who is not a family farmer, ten percent; or
   (ii) in the case of a debtor who is a family farmer, the sum of—
   (I) not to exceed ten percent of the payments made under the plan of such debtor, with

respect to payments in an aggregate amount not to exceed $450,000; and
   (II) three percent of payments made under the plan of such debtor, with respect to payments made after the aggregate amount of payments made under the plan exceeds $450,000;
   based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.
   (2) Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States trustee shall deposit in the United States Trustee System Fund—
   (A) any amount by which the actual compensation of such individual exceeds 5 per centum upon all payments received under plans in cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee; and
   (B) any amount by which the percentage for all such cases exceeds—
   (i) such individual's actual compensation for such cases, as adjusted under subparagraph (A) of paragraph (1); plus
   (ii) the actual, necessary expenses incurred by such individual as standing trustee in such cases. Subject to the approval of the Attorney General, any or all of the interest earned from the deposit of payments under plans by such individual may be utilized to pay actual, necessary expenses without regard to the percentage limitation contained in subparagraph (d)(1)(B) of this section.

*Savage*, 67 B.R. 700, 705–6 (D.R.I.1986). 11 U.S.C. § 326(b) states, "In a case under chapter 12 or 13 of this title, *the court may not allow compensation* for services or reimbursement of expenses of ... a standing trustee appointed under section 586(b) of title 28." (emphasis added). It is section 586(b) which provides that the United States Trustee may appoint a standing trustee.[6]

The rest of the statute is similarly phrased in quite specific and mandatory language which argues against an understanding that the fees might be adjusted by the courts. 28 U.S.C. § 586(e)(1) requires the Attorney General to "fix" the maximum annual compensation of trustees. Similarly § 586(e)(2) states that the standing trustee "shall collect such percentage fee from all payments under the plan." The statute thus describes the Executive Branch's role in setting payment under the percentage system in strong terms and is silent on any possibility of judicial adjustment. *See Savage* at 705.

The statutory silence on the issue of judicial review of trustees' fees for reasonableness contrasts sharply with the explicit provisions for judicial involvement in Chapter 7 and 11 cases. As in the case of Chapter 12, the statute fixes a maximum fee under these chapters based on a percentage of the monies disbursed. 11 U.S.C. § 326. The actual amount to be awarded, however, is specifically committed to the discretion of the court. The bankruptcy court is to make a determination of the reasonableness of a fee for the trustee's efforts "based on the nature, the extent, and the value of such services." 11 U.S.C. § 330(a)(1). This is precisely the kind of determination which the Scholletts ask the court to make in the Chapter 12 context involved here. However, while the Bankruptcy Code provides in detail for the judicial determination of reasonable trustees'

fees in Chapter 7 and 11, it makes no provision at all for reasonableness review in Chapter 12. When Congress wished to allow the judicial revision of administratively set fees it made this intent clear. We can only assume then that the statute's silence on the question of judicial review of the reasonableness of Chapter 12 percentage fees reflects Congress' intent that such review not occur. *See United States v. Jones*, 567 F.2d 965, 967 (10th Cir.1977) ("if a statute expresses an exception to the general application other exceptions are excluded").

The argument for judicial review of the reasonableness of the fixed fee is further undermined by the fee structure of the statute. In order to prevent unreasonably high fees, Congress has set a general cap on trustees' fees of ten percent. Congress has further required that the Attorney General base the fixed fee on the actual, necessary expenses to be incurred by the standing trustee. 28 U.S.C. § 586(e)(1)(B). Congress has limited the Attorney General's discretion by creating a narrow band of possible percentage fees. The possibility of abuse of this straitened area of discretion is thus limited and the need for judicial review is diminished.

The need for a case-by-case reasonableness inquiry by a court is obviated by other provisions of the statute. First, the very fact that trustees' fees owed are not a flat fee but depend on the size of payments ensures some degree of reasonableness of the fee as applied to particular cases. The reasonableness of these fees is then refined by the reduced percentage for individual cases where the payments are quite large but for which the trustee is likely to enjoy economies of scale. Congress has thus already provided a mechanism by which a trustee's fees will vary on a case-by-case

---

**6.** The appellants maintain that the "may not allow" language here explicitly excludes judicial review. However, the rest of the quoted sentence provides that a court "may allow reasonable compensation of a trustee appointed under section 1202(a)". Section 1202(a) provides for the appointment by the United States Trustee of case-by-case trustees. Section 586(b)'s "allow

compensation" language thus provides nothing more than the mechanism that standing trustee rates are to be set by the United States Trustee and case-by-case trustee rates are to be set by the court. It thus does not explicitly forbid judicial review of those rates once set, but neither does its plain language indicate support for such review.

basis to some degree to reflect the expected effort.

The appropriateness of judicial review on a case-by-case basis is also disproved by the very idea of a fixed percentage. A standing trustee undertakes the obligation to serve as trustee in all cases filed within the district. She cannot know in advance which cases will actually arise or the degree of effort they will require. Her agreement to accept the percentage fee in exchange for a commitment to undertake all of the district's trusteeship duties is thus based on a calculation of the average effort required compared with the average payments involved. The cases in which she receives greater compensation will presumably be counterbalanced by those for which her fees will be minimal. It would be inequitable to allow debtors to reduce a trustee's fees in remunerative cases while still requiring her to serve in those cases in which there is no hope of favorable compensation. *Accord Savage*, 67 B.R. at 708. By these safeguards the statutory scheme thus minimizes the need for another layer of case-by-case review which would be somewhat unfair to the trustee who has agreed to serve in all cases, regardless of individual compensation.

■ Reading the statute as not providing for judicial review of standing trustee's fees is in accord with the overall purpose of the Act. The Act sought to separate judicial and administrative functions. H.Rep. No. 99–764 at 17. The limitation of judicial control over the bankruptcy trustee was one of the specific objectives the Act was designed to address. *Id.* at 18. Thus, although other courts have divided on the issue and a minority reach a contrary con-

clusion, we hold that because the language, structure, and purpose of the Act all weigh against judicial review of the standing trustee's fees, such review is not authorized by the statute.[7]

The order of the district court is therefore REVERSED. The cause is REMANDED to the bankruptcy court for proceedings consistent with this opinion.

---

7. This holding agrees with the majority of the courts which have addressed the issue. *See In re Burkhart*, 94 B.R. 724, 728 (Bankr.N.D.Fla. 1988) (rejecting case-by-case review of fees but reserving judgment on general review); *In re Finkbine*, 94 B.R. 461, 463 (Bankr.S.D.Ohio 1988) ("court is without a basis, equitable or otherwise, to adjust this statutory percentage"); *In re Land*, 82 B.R. 572, 579 (Bankr.D.Colo. 1988) ("statute contains no provision for judicial supervision of compensation paid to standing Chapter 13 trustees"); *In re Erickson Partnership*, 77 B.R. 738, 750 n. 13 (Bankr.D.S.D.1987)

(disapproving, in dicta, of judicial review of fees); *In re Citrowske*, 72 B.R. 613, 615 (Bankr. D.Minn.1987) ("court is without authority to determine or in any way adjust the compensation ... of the standing trustee"); *In re Savage*, 67 B.R. 700, 705 (D.R.I.1986) (overruling a developing line of cases which allowed judicial review of fees for reasonableness). *See also, Collier on Bankruptcy*, ¶ 1202.01 n. 18; *but see, In re Melita*, 91 B.R. 358, 363 (Bankr.E.D.Pa.1988) (absent clear contrary congressional intent, power to review fees survives Act).