**In re Ella Louise TURNER, Debtor.**

**Bankruptcy No. 94–50322–C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

June 2, 1994.

Reed C. Greene, San Antonio, TX, for debtor.

Robert L. Barrows, LeLaurin & Adams, San Antonio, TX, for Marion A. Olson, Trustee.

Thomas W. Howe, Adams & Flake, Universal City, TX, for Valley Nat. Financial Service.

Mary A. Daffin, Barrett Burke Wilson Castle Daffin & Frappier, Houston, TX, for BancPlus Mortg. Corp.

## DECISION ON TRUSTEE'S OBJECTION TO CONFIRMATION

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the foregoing matter. The debtor's chapter 13 plan proposes that the trustee's fee be assessed against each payment made to each creditor—including payments made to two secured creditors, BancPlus Mortgage Corp. (on the homestead arrearages), and Valley National Financial Service (a car payment).[1] The trustee objects. The court concludes that the plan may not be confirmed in its present form. This decision constitutes the

court's findings and conclusions in support of its ruling. FED.R.BANKR.P. 7052.

## JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), as a matter arising in or arising under the Bankruptcy Code (and related statutes). This is a core proceeding. 28 U.S.C. § 157(b)(2).

## FACTS

The facts are not in dispute. The debtor's plan is feasible if she can require the creditors, rather than the debtor, to fund the trustee's statutory commission. Her plan proposes just that.

The plan is a 1% plan (i.e., 1% to unsecured creditors). Unsecured creditors will be "charged" the chapter 13 trustee's percentage fee, albeit in a de facto sense (because the amount paid to unsecured creditors is that amount which remains net of payments to secured creditors, administrative claims, and the chapter 13 trustee's percentage fee). This aspect of the plan is consistent with the way chapter 13 plans are done in this and most other districts. The plan goes on to provide, however, that 10% will also be deducted out of that portion of the plan payment allocated to each secured creditor, so that these creditors will actually receive only 90% of the payment designated for them in the plan. Without this proviso, the debtor would have to increase the overall plan payment in order to both fund the trustee's percentage fee attributable to the payment to be made to the secured creditors and still pay these secured creditors 100% of the payment designated for them in the plan. In other words, the debtor proposes that each secured creditor help to fund the trustee's fee out of its respective payments, just as unsecured creditors do routinely.

The trustee objects on the ground that it is the debtor's responsibility to fund the trustee's fee by increasing the plan payments if necessary. The trustee contends that the debtor's proposal would violate section 1325(a)(5)(B)(ii) of the Bankruptcy Code,

1. The debtor has since surrendered the car, so this claim falls into the unsecured creditor class.

which requires that the aggregate payments made to a secured creditor equal the present value of the secured creditor's claim.[2]

If the debtor cannot shift that burden as proposed in her plan, the plan is not feasible and cannot be confirmed.

### DISCUSSION

█ Section 586(e)(2) of title 28 directs a standing trustee administering cases under chapters 12 and 13 of title 11 to collect a percentage fee not to exceed 10% (the actual amount is set by the Attorney General of the United States) from all payments received by the trustee under the plans in all cases in which the trustee serves. Section 1326(b)(2) of title 11 in turn provides that, before or at the time of each payment to creditors under the plan, the percentage fee provided for in section 586(e) of title 28 shall be paid. The debtor in this case maintains that the "payments received" language of section 586(e)(2) directs the court to focus on the plan payment, out of which debtor contends the trustee's fee should be deducted. The language of section 1326(b) of title 11 supports that interpretation, says the debtor. Because part of the plan payment on which the trustee's percentage fee is computed will be applied to secured debt, the debtor argues that the creditors (i.e., all the creditors), rather than the debtor, are supposed to bear the cost of the trustee's fee, as the plan is administered principally for creditors' benefit. Continuing down this road, the debtor logically concludes that the secured creditor's portion of the plan payment should be reduced by the portion of the trustee's fee allocable to it.

█ The debtor's proposal raises significant questions about whether such a plan satisfies the best interests test in section 1325(a)(4), or the present value test of section 1325(a)(5)(B)(ii). The debtor responds that the best interests test in section 1325(a)(4) applies only to unsecured creditors (which is correct), so we are not concerned that the debtor's proposal might not yield to the *secured* creditor as much as the creditor

would receive in a chapter 7 liquidation (though the test is still relevant to the larger issue in this case, as we shall discuss below). As for the present value test, the debtor argues that the "property *to be* distributed" language of section 1325(a)(5)(B)(ii) suggests that this test ought to be applied to that part of the plan payment designated for that creditor *before* the trustee's fee is deducted from the plan payment, not *after.* Says the debtor, the "property to be distributed" in section 1325(a)(5)(B)(ii) focuses on the *proposed* distribution under the plan, and not the *actual receipt* by the creditor. Therefore, concludes the debtor, so long as the property *to be* distributed satisfies the present value test, it does not matter that the property *ultimately* distributed (*i.e.,* after deduction of the trustee's fee) fails to yield the present value of the creditor's claim.

The issue presented is intriguing enough in its own right, but it raises significant systemic problems as well. The suggestion that underlies the debtor's position is that the creditors, and not the debtor, are the parties actually responsible for paying the trustee's fee. The point takes on especial significance when the plan is a *full pay,* or 100% plan. The trustee's practice in this district (as is the practice in many districts) is to require the debtor to set the plan payment high enough to cover the total of payments contemplated to be made to creditors *plus* the trustee's percentage commission on that amount. The trustee may refuse to recommend confirmation or may even affirmatively object to confirmation unless this is done. The debtor says that adding commissions in the case of a 100% plan converts the plan into a 110% plan, which forces the debtor, rather than the creditors, to pay for the administration of the case.

We must therefore decide who pays the trustee's commission in a chapter 13 case— the creditors or the debtor. If it is the creditors, then we must also decide if secured creditors are also expected to shoulder the cost of administering the plan.

---

**2.** Under the debtor's plan, the payments proposed to each secured creditor satisfy the "present value" test of section 1325(a)(5)(B)(ii) *before* the proposed deduction. That deduction would cause the total of payments received by the creditor to fall *below* the present value.

Resolving the issues presented in this case requires us to construe the language of three different statutes, sections 1326(b) and 1325(a)(5)(B)(ii) of title 11, and section 586(e) of title 28. The wording used in these statutes is slightly different, and it is on these differences that the debtor principally predicates her arguments. To reiterate, section 586(e) of title 28 speaks of "payments received." Section 1326(b) says that "there shall be paid" the trustee's percentage fee (without reference to who does the paying or what the source of payment ought to be), and directs that it shall be paid at or before the time of "each payment to creditors under the plan" (of necessity not the same thing as "payments received").[3] Section 1325(a)(5) (B)(ii) speaks of "property to be distributed," but leaves open the question posed by the debtor here (is this *before* or *after* the trustee's fee is paid?).

The issue here presented has apparently not been addressed in the case law to date. A similar issue, however, involving the computation of the trustee's percentage fee in chapter 12 cases, has generated a few decisions that have had to struggle with the meaning and interpretation of these statutory phrases (phrases used in both chapter 12 and chapter 13). Their analysis may shed some light on our problem.

Section 586(e)(1) directs that the Attorney General is to fix a percentage fee not to exceed ten percent in chapter 13 cases, and ten percent of "payments made under the plan" in chapter 12 cases. 28 U.S.C. § 586(e)(1). Subsection (e)(2) then directs the standing trustee to collect the percentage fee from "all payments received" by the

standing trustee "under plans" in cases in which the standing trustee serves as trustee. 28 U.S.C. § 586(e)(2). Because of the "payments received" language, it has been the United States Trustee's position that, in a "full pay" plan, the actual percentage fee is not 10% but 11.11%, because the "payments received" include a portion allocable to the trustee's percentage fee, and 10% should be applied to that amount as well, adding an additional 10% of 10% (or 1%), upon which the 10% should once again be applied, adding an additional .1%, and so forth. Debtors respond in these cases that the fee is set at 10%, and this compounding violates the "not to exceed" language in subsection 586(e)(1). To resolve the problem, courts have had to try to reconcile the "payments received" phrase with the "payments under the plan" language found in subsection (e)(1). Reconciling these phrases will not completely resolve the issue presented in this case, but may at least help.

The Tenth Circuit, forced to grapple with the chapter 12 problem, commented in a recent decision that "[w]hether Congress intended to allow the standing trustee to, in effect, collect a fee on his or her fee, or intended to limit the trustee's fee to a percentage of disbursements, is not clear from the statutory language, the larger statutory context, or the legislative history." *Foulston v. BDT Farms, Inc. (In re BDT Farms, Inc.)*, 21 F.3d 1019, 1023 (10th Cir.1994). In apparent frustration with the task, the court simply elected to defer to the United States Trustee's proffered interpretation of section 586(e), essentially without analysis.[4] The

---

**3.** "Payments received" refers to what the debtor pays the trustee. The total of "each payment to creditors under the plan" is therefore, of necessity, *net* of the trustee's fee, which must be paid before creditors receive their payments. 11 U.S.C. § 1326(b)(2).

**4.** The court premised its chosen course on the general proposition that the construction of a statute by an administering agency ought to receive deference unless it is arbitrary, capricious, or manifestly contrary to the statute. *Id.* at 1023 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)). At least one other court has declined to follow *BDT*, arguing that the statute in question is not suffi-

ciently ambiguous to warrant resort to this doctrine, and that the United States Trustee's proposed construction of the statute is impermissible. *In re Wallace*, 167 B.R. 531 (Bankr.E.D.Mo. 1994). One might add that the "construction of a statute" under consideration in *Chevron* was not the position of the litigant urged in trial court, but rather the regulations promulgated by the agency over which the litigation arose. As the Court in *Chevron* explained,

"The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct.

court thus concluded that the trustee's fee should be computed on all monies received from the debtor, including those monies attributable to the trustee's fee. Even though the resulting fee, from the debtor's frame of reference, becomes 11.11%, the fee from the Attorney General's frame of reference remains 10% of "payments received."[5]

*BDT Farms* highlights the difficulty of reconciling the "payments received" language of section 586(e) of title 28 with the "property to be distributed" language of section 1325(a)(5)(B)(ii) and the "there shall be paid" language of section 1326(b). This last section does not identify the expected *source* of the payment to be made to the trustee—is it *out of* the plan payment, or *on top of* the plan payment? If the latter, should "plan payment" be read to mean just what is paid to creditors, or should it include the trustee's fee? And does not "property to be distributed" seem to focus on that portion of the plan payment *intended* to be disbursed to creditors, as opposed to what is ultimately distributed? Is the chapter 13 trustee himself a creditor? The Tenth Circuit's approach unhelpfully avoids all these issues.

A district court in Vermont also struggled with the language of section 586(e) in the chapter 13 context. *Edge v. Maikoff (In re Edge)*, 122 B.R. 219 (D.Vt.1990). The issue presented, in the words of the court, was: "whether a standing trustee's percentage fee under 28 U.S.C. § 586(e) is computed with reference to the amount intended to be paid creditors through the standing trustee under a repayment plan, or with reference to the total amount transferred to the standing trustee regardless of whether the funds are earmarked for creditors." *Id.* at 220. The

court answered the question by holding that "funds paid to a standing trustee for purposes of paying the standing trustee's percentage fee are not payments under a Chapter 13 repayment plan. Thus they are not subject to the standing trustee's percentage fee." *Id.* at 221. The court grounded its conclusion on its belief that the trustee stands "outside" the plan, and is not a recipient of payments made "under" the plan: "[t]he trustee and payment provisions of Chapter 13 draw a distinction between payments under a repayment plan and the payment of a standing trustee's percentage fee. We should not interpret 28 U.S.C. § 586(e)(2) in a way that ignores this statutory distinction." *Id.* at 222.

*Edge* thus recognizes that the trustee's percentage fee in chapter 13 cases is in some sense handled "outside" the plan payments, and is not, in the bankruptcy sense, an "administrative claim." The standing trustee is thus not, in the truest sense, a creditor of the estate. *Id.; see also In re Weaver*, 118 B.R. 730, 731 (Bankr.D.Neb.1990) (trustee's fee to be computed on all payments received; the fee is not a percentage of payment to creditors and claimants). Indeed, section 326(b) explains that a standing trustee's percentage fee is not governed by section 326(a), which takes it out of section 330(a) (the compensation section), and so out of section 503(b)(1)(A) (the administrative expenses section). There is no "priority" for the trustee's percentage fee in section 507, and it does not stand as a "claim" against the estate.

What are the implications of this observation? Simply this. We may not obtain an easy answer to our "who pays" question by simply analogizing to chapter 7 (as the debt-

---

1055, 1072, 39 L.Ed.2d 270 (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.
*Chevron, U.S.A., Inc. v. Natural Resources Defense*, 467 U.S., at 844–46, 104 S.Ct., at 2783. The D.C. Circuit has commented recently that there must be "either explicit or implicit evidence of congressional intent to delegate *interpretative* authority" as a precondition to a

court's according deference to the agency's interpretation. *Kelley v. Environmental Protection Agency*, 15 F.3d 1100, 1105 (D.C.Cir.1994) (emphasis added), citing *Linemaster Switch Corp. v. EPA*, 938 F.2d 1299, 1303 (D.C.Cir.1991). This court knows of no such delegation given to the United States Trustee, and no authority for such a delegation was cited in *BDT*, casting considerable doubt on the propriety of that court's approach.

5. More will be said later regarding this "frame of reference" approach to understanding different elements of a given statutory scheme.

or's argument suggests we should). In chapter 7, of course, the Code itself gives a fairly definitive answer to the "who pays" question in section 726. The trustee's fee in chapter 7 cases *is* regulated by the court, via section 330(a), and qualifies as an administrative expense claim under section 503(b)(2) that is entitled to priority treatment under section 507(a). 11 U.S.C. §§ 330(a), 503(b)(2) & 507(a)(1). Section 726, which governs the order of distribution in chapter 7 cases, provides that priority claims get paid first. Thus, trustee's fees in chapter 7 cases follow a straightforward pattern: If the estate is insolvent, secured creditors are satisfied via a return of their collateral (or the proceeds thereof), 11 U.S.C. § 725, and unsecured creditors pay for the cost of administering the estate via the distributional scheme set up in section 726. If the estate is *solvent,* the same distributional scheme has a slightly different outcome—it is the *debtor* who, in effect, pays for the cost of administration.[6]

Because the standing chapter 13 trustee's fee is *not* an administrative claim in the bankruptcy sense, the chapter 7 analogy to the "who pays?" question breaks down. True enough, section 1322(a)(2) requires that priority claims be paid in full over the term of a chapter 13 plan, and section 1326(b)(1) requires that priority claims be paid "off the top" along with the percentage fee. The interplay of these two provisions has the effect of mimicking the outcome of section 726(a)(1) in chapter 13. But they do not *duplicate* the outcome. Other priority claims, by contrast, such as the debtor's attorney's fees, or priority tax claims, *do* get handled in chapter 13 cases in essentially the same fashion (and following essentially the same rules) as they are handled in chapter 7.

But the standing chapter 13 trustee's percentage fee originates elsewhere, so that the rules (and the underlying policies) that govern priority claims do not necessarily govern the trustee's percentage fee. Any analysis premised on figuring out who is responsible for paying for the "administration" of the case (in the sense of section 503(b) administrative expenses) starts out on the wrong foot, invoking the wrong policies and so ending up with the wrong result.

The trustee's fee in chapter 13 cases looks more like a "user's fee" than anything else—and the user is the debtor. The trustee is obligated by a provision in title 28 to deduct the percentage fee from the total of all payments received in all cases he or she administers, with any excess (*i.e.,* amounts exceeding what the statute permits standing trustees to be compensated) turned over to the United States Trustee, who then forwards the funds to the Attorney General, who in turn then reallocates the extra monies as she sees fit. The bankruptcy court lacks the jurisdiction to interfere with the compensation scheme set out in section 586(e). *See, e.g., Dunivent v. Schollett (In re Schollett),* 980 F.2d 639, 644–45 (10th Cir.1992); *In re Marriott,* 156 B.R. 803, 804–05 (Bankr.S.D.Ill.1993). And the base for the trustee's computation is simply "payments received" by the trustee, without regard to their source, character or purpose. *In re BDT Farms, Inc.,* 21 F.3d 1019. Indeed, in this regard the fee resembles the fee charged to chapter 11 estates by the United States Trustee—computed on a case-specific base, but paid outside the distributional scheme of the statute.[7] The "user fee" is assessed against "payments received" by the trustee from the debtor, independent of the sort of priority of distribution one

---

**6.** For example, suppose, after all secured creditors have been taken care of, there remains $1,000 in cash to be distributed among $150 in priority claims, $500 in unsecured claims, and $50 in interest. Only after all those claims have been paid will the balance of $300 be returned to the debtor, who will have, with her $1,000, paid her unsecured creditors in full ($500), plus interest ($50), and will *also* have paid the costs of estate administration reflected in the priority payment of priority claims ($150).

We shall see later in this decision that the interplay of the statutory provisions governing the

payment of the trustee's percentage fee in chapter 13 cases leads to the same ultimate result in that chapter as well. *See* discussion *infra.*

**7.** Recall that the United States Trustee does not hold an administrative claim in a chapter 11 case. Instead of looking to sections 503(b), 507(a), and 1129(a)(9), the United States Trustee looks directly to section 1129(a)(12) of title 11 and section 1930 of title 28. If the fees are not paid by the effective date of the plan, the plan cannot be confirmed. *See* 11 U.S.C. § 1129(a)(12); 28 U.S.C. § 1930(a)(6).

finds in chapter 7 (in section 726). The fee can even be deducted before payment is made to each creditor. 11 U.S.C. § 1326(b)(2). In fact, the language of section 1326(b) ("there shall be paid") says that the payment may be in some sense entirely "independent" of payments to creditors.

This last point is important. As with Einstein's theory of special relativity,[8] how and from where the trustee's fee is paid depends on one's frame of reference. From the point of view of the trustee, the rule is laid out in section 586: from all the payments received, regardless how those payments were originally calculated or arrived at, and regardless where they ultimately will go, take out the percentage fee prescribed in the statute (it is currently 10%). From the point of view of the debtor, section 1326(b) gives a simple directive: there shall be paid the percentage fee fixed by section 586 of title 28 (*i.e.,* the 10% fee). *How* it shall be paid, or *by whom,* is another issue. It might be paid out of the total payments to creditors, or it might be paid by the debtor in addition to the payments to creditors.

There is a *third* frame of reference, however, that of creditors (*vis-a-vis* what they are entitled to insist upon as a precondition to confirmation of a debtor's plan). *See* 11 U.S.C. § 1325(a). It is *that* frame of reference that dictates the result in this case, and so we examine more closely how the chapter 13 system looks and operates from creditors' point of view.

■ Unsecured creditors are entitled to receive at least as much as they would receive in a chapter 7 liquidation. They may insist on a plan payment sufficient to assure that the "best interests" requirements of section 1325(a)(4) are met, and may do so without reference to the monies to be paid for the trustee's percentage fee. Here's why. The statute permits unsecured creditors to focus on the property to be distributed under the plan to *them.* 11 U.S.C. § 1325(a)(4). But what is to be distributed to the unsecured creditors is necessarily *net* of the trustee's percentage fee, because that fee *must* be taken out of the *total* plan payment *before* any money is distributed to creditors. *See* 11 U.S.C. § 1326(b).[9] Therefore, the "property to be distributed under the plan *on account of each allowed claim*" can only be that portion of the plan payment which is to be distributed to unsecured creditors *after the section 1326(b) deduction.* 11 U.S.C.

---

**8.** *See* Kip S. Thorne, Black Holes & Time Warps—Einstein's Outrageous Legacy, 80–81 & 97–98 (W.W. Norton & Co., New York 1994). In an effort to explain the concept, Prof. Thorne lays out the following thought experiment:

[C]onsider the special relativistic law that describes the motion of a freely moving object (let it be a cannonball) in a universe without gravity. As measured in any inertial frame in that idealized universe, the ball must move along a straight line and with uniform velocity. Compare this with the ball's motion in our real, gravity-endowed Universe: If the ball is fired from a cannon on a grassy meadow on Earth, and is watched by a dog who sits on the grass, the ball arcs up and over and falls back to Earth. It moves along a parabola as measured in the dog's reference frame. Einstein asks that you view this same cannonball from a small, freely falling reference frame. This is easiest if the meadow is at the edge of a cliff. Then you can jump off the cliff just as the cannon is fired, and watch the ball as you fall. [I]magine that you hold in front of yourself a window with twelve panes of glass, and you watch the ball through the window.... As seen by you, relative to your windowpanes, the ball moves along [a] straight dashed line with constant velocity.

Thus, in the dog's reference frame the ball obeys Newton's laws; it moves along a parabola. In your small, freely falling reference frame it obeys the laws of gravity-free special relativity; it moves along a straight line with constant velocity....

*Id.* at 97–98. Those having trouble conceptualizing the concept are directed to Prof. Thorne's book, which contains a helpful set of drawings that demonstrate clearly that what he *says* happens is exactly what *does* happen.

**9.** Because the trustee's percentage fee does not figure into their analysis, unsecured creditors are not permitted to argue that, if the trustee's fee were not deducted, they would receive more. They are relegated to simply comparing what they will receive *net* of the fee (which is paid *before* they receive their plan payment) with what they would receive in a chapter 7 liquidation. *See* 11 U.S.C. §§ 1326(b) & 1325(a)(4). They may object that the plan does not represent the debtor's "best efforts" as well, but here again, they cannot protest the trustee's fee. The "best efforts" test is satisfied if the debtor applies all of her disposable income "to make payments under the plan." The phrase of necessity will encompass the trustee's fee.

§§ 1325(a)(4), 1326(b). The plan must, perforce, provide enough of a *net* payment to these unsecured creditors to pass this test. If the deduction of the trustee's fee from the total plan payment operates to *reduce* the amount unsecured creditors are to receive below that "best interests" minimum, the plan simply cannot be confirmed. The only choice the debtor has, in order to avoid denial of confirmation, is to increase the *total* amount of money to be paid *into* the plan to cover the trustee's percentage fee *and still* have enough to satisfy at least the minimum required by the "best interests" test.[10]

■ The same analysis applies to secured creditors, but with a vengeance. Even if the trustee's fee *were* an administrative claim, *i.e.*, an expense of administration, the secured creditor could not be compelled to shoulder that expense unless the requirements of section 506(c) were met. *General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73, 76 (2d Cir.1984); *In re Croton River Club, Inc.*, 162 B.R. 656, 659 (Bankr.S.D.N.Y. 1993).[11] As it is, the secured creditor can comfortably ignore the debtor's dilemma, and rely solely on the protections of section 1325(a)(5) and its promise that the plan will provide property of a value equal to the present value of the allowed secured claim. Though the test is different for secured creditors than it is for unsecured creditors, the starting point for applying the test is the same—"property to be distributed *on account of such claim.*" 11 U.S.C. § 1325(a)(5)(B)(ii). We know that section 1326(b) will still require a deduction of the trustee's percentage fee from the *total* plan payment, even though part of the plan payment is designated to be applied toward the payment of secured claims under the plan. We also know that this deduction will be made *before* any distributions are made to creditors, including to secured creditors. *See* 11 U.S.C. § 1326(b). Thus, as with the "best interests" test applied for the benefit of unsecured claims, the property actually to be distributed to the secured creditor, to which we are to apply the "present value" test, can only be that designated portion of the total plan payment *net* of the trustee's percentage fee. *See* 11 U.S.C. §§ 1325(a)(5)(B)(ii), 1326(b).[12]

■ Trustees also have a powerful weapon in their own right with which to assure that there will be enough money in the plan payment to cover the trustee's percentage fee and still leave a net sufficient to satisfy the above tests. Section 1325(b) authorizes the trustee to insist that the plan provide that all of the debtor's projected disposable income "will be applied to make *payments* under the plan." 11 U.S.C. § 1325(b) (emphasis added). This "best efforts" test functions primarily to assure that unsecured creditors will receive not just the minimum but the maximum possible in satisfaction of their claims, to be sure. But the term "payments under the plan" permits the trustee to use the selfsame statute to make certain that *the entire payment* is funded, inclusive of the obligations imposed by section 1326(b), and not simply that distributions to creditors are funded. The payments under the plan must include a component for the trustee's percentage fee, because the trustee is required to *deduct* this fee from "payments received." *See* 28 U.S.C.

---

10. The trustee in such a situation usually insists that the plan payment be increased by an amount sufficient both to cover the fee which he must deduct from the payments received (per section 586(e)) and to assure that the property to be distributed to the unsecured creditors will still equal or exceed the "best interests" minimum.

11. No such showing has been made in this case, nor was the proposition seriously advanced by the debtor.

12. Once again, the trustee faced with not enough money in the plan to meet this test will insist that plan payments be augmented to assure a distribution to secured creditors that will not violate section 1325(a)(5), and that the trustee will be able to honor his or her own obligations under section 586 of title 28. Actually, because of the way the "present value" and "best interests" tests work, the trustee will first find the net payment available for distribution to creditors after deducting the percentage fee and after paying the monthly payment designated for priority claims. He or she will then make sure that there is enough in the plan payment to satisfy the "present value" test for affected secured creditors. If so, then the trustee will test the remainder to see whether it satisfies the "best interests" test for unsecured creditors.

§ 586(e)(2); *see also* 11 U.S.C. §§ 1306, 1326(b).[13] Therefore, even if the plan payment in a given case is sufficient to fund all creditor claims in full, if the debtor still has excess income after deducting that payment, and if the plan payment does not, in addition, include a component for the trustee's fee, then the trustee can successfully object that the "payments under the plan" do not satisfy the "best efforts" test. In this way, the trustee enters the "creditors' frame of reference" both to assure due administration of the chapter 13 process and to assure his or her own ability to comply with the directives of section 586(e) of title 28.

The debtor must, to meet these various section 1325 tests, add money to the plan payment as needed (and to the extent she is able) in order to obtain confirmation. She must have enough money to meet the "present value" test. She must also have enough money to satisfy the "best efforts" test. And finally, she must be able to satisfy the "best interests" test. From the frame of reference of the parties who are the beneficiaries of these tests (*i.e.*, the creditors and the trustee), they are not the source of payment for the trustee's fee. The debtor is. From the debtor's frame of reference, she is the source of payment for the trustee's fee if the case is a full pay plan, but the unsecured creditors are the source of payment if (1) the plan is less than a full pay plan, (2) the debtor passes the best efforts test, and (3) there is not enough money to pay *both* the trustee's fee *and* the unsecured creditors.[14] From no frame of reference, however, is the secured creditor the source of payment for the trustee's fee (unless a section 506(c) charging order is entered).

■ The debtor's sole remaining argument is essentially textual. She suggests that the phrase "property *to be* distributed"

found in both the "best interests" and "present value" test permits the court to apply these tests to the portion of the plan payment allocable to a given creditor *before* deducting the trustee's fee. The debtor points out that in section 1129(b)(2)(A)(i)(II), the counterpart "present value" test found in chapter 11, the court is instructed to determine whether the holder of a claim will "*receive* on account of such claim deferred cash payments totalling at least the allowed amount of [the] claim, of a value … of at least the value of such holder's interest in the estate's interest in such property." 11 U.S.C. § 1129(b)(2)(A)(i)(II) (emphasis added). By comparison, the chapter 13 test asks whether "the value … of property *to be distributed* under the plan on account of such claim is not less than the allowed amount of the secured claim." 11 U.S.C. § 1325(a)(5)(B)(ii) (emphasis added). The distinction, says the debtor, is one with a difference, because Congress could have couched the test in terms of what a creditor might expect to *receive*, but instead chose words that permit a court to evaluate only what is *intended* to be distributed under the plan *vis-a-vis* the tests. Thus, says the debtor, the court may ignore the fact that the trustee's fee will eventually be pulled out of these payments, even though, as a result, the *net* payment to these creditors would *fail* the "best interests" or "present value" tests.

The debtor's argument actually proves itself false. As we saw in our "frame of reference" discussion earlier, secured creditors justifiably could care less how the trustee's fee gets paid—so long as it does not affect them. The statute focuses on property to be distributed under the plan *on account of such claim,* i.e., on account of the secured claim itself. *See* 11 U.S.C. § 1325(a)(5)(B)(ii). Property to be distribut-

**13.** Actually, we have glossed over another important creditor group, the holders of priority claims. They may insist on full compliance with section 1322 without regard to the trustee's fee. *See* 11 U.S.C. § 1322(a)(2). In fact, their payment comes "off the top" of each payment under the plan along with the trustee's percentage fee, per the directive of section 1326(b)(1). 11 U.S.C. § 1326(b)(1). Thus, there must first be enough in the payment provided for by the plan to fund the section 1326(b) deductions first, then enough

to satisfy the secured creditors' present value test, then enough to satisfy the unsecured creditors' best interest test. If there are still monies available in the debtor's budget, the trustee may then insist on increasing the payout to unsecured creditors by requiring the plan to meet the best efforts test.

**14.** This is so because the net effect is to reduce the dividend to unsecured creditors.

ed to the trustee for his or her fee is not property to be distributed on account of the secured creditor's claim. The only property "to be distributed" to the secured creditor "on account of its claim" is that property *net* of the deductions taken pursuant to section 1326(b). It is these net payments, therefore, which must pass the "present value" test, before a plan can be confirmed; only after the trustee has taken the deductions is the trustee allowed to then commence payments to creditors *in accordance with the plan.* 11 U.S.C. § 1326(a)(2).[15]

Case law supports this textual reading. The same words ("property to be distributed") are used in both the "present value" and the "best interests" tests. In application, courts read the phrase in terms of what creditors will *receive. See Tower Loan of Mississippi, Inc. v. Maddox (In re Maddox),* 15 F.3d 1347 (5th Cir.1994); *In re Driver,* 133 B.R. 476 (Bankr.S.D.Ind.1991); *In re Foulk,* 134 B.R. 929 (Bankr.D.Neb.1991). According to the Fifth Circuit, "under § 1325 the plan generally must provide that the unsecured creditors *receive* at least as much value as they would have received in a chapter 7 liquidation, and that the secured creditors *must receive* the present value of their collateral." *Maddox,* 15 F.3d at 1352 (emphasis added); *see also General Motors Acceptance Corp. v. Jones,* 999 F.2d 63, 66–67 (3d Cir.1993) (purpose of "present value" test is to place secured creditor in an economic position similar to the one it would have been in had it been paid in cash on the effective date of the plan). From the frame of reference of the secured creditor, then, the trustee's fee becomes irrelevant—unless the plan attempts what this plan does.

So who worries about making sure there is enough money in the plan to cover the fee? The trustee does, of course. If the plan does not provide sufficient funding *both* to cover the obligations that must be met by the terms of the plan (so that the trustee can make distributions in accordance with the plan per section 1326(a)(2)) *and* to cover the

trustee's fee (which the trustee will have to deduct from the total of payments received from this and other cases in order to comply with section 586(e) of title 28), the trustee cannot recommend confirmation. The trustee must object, or risk coming up short on one or the other of these responsibilities. So the trustee resists confirmation when plan payments are too low—on the ground of lack of feasibility, on the ground that the plan violates the "best interests" or "present value" test, or on the ground that the plan does not represent the debtor's best efforts. In the case of a *full pay* plan, the trustee will have to make sure that the plan pays *more* than 100% if it is to actually achieve full payment to creditors, for otherwise the obligatory "accounts sweep" required by 28 U.S.C. § 586(e) would reduce the funds available to creditors and result in something less than 100% payment. And the source of payment will be the debtor, not the creditors.

The court appreciates the equitable appeal of debtor's argument in this case. It is certainly not without merit. For better or worse, however, Congress has made a choice about how it wishes to fund the national chapter 13 program. This court is not at liberty to alter or amend that choice. The apparent confusion amongst the various statutory phrases clears up when we employ the frame of reference analysis used here. Different parts of the statute are addressed to different concerns. We should not be too surprised that the language employed in each part is slightly different, colored by the unique concerns addressed in each part. It would be a mistake to read more into the language choices than that—and an even greater mistake to apply a hypertechnical, "plain meaning" grammarian's ruler that ignores context. As much as so many decisions of late pantingly recite the primacy of the "plain meaning" rule of statutory construction when construing provisions of the Bankruptcy Code, our first duty as judicial officers is still to seek after congressional intent. When context is ignored, and we

15. If a plan satisfies section 1325(a)(5)(B)(ii), then perforce the payment to secured creditors provided in that plan must satisfy the present value test found there. The trustee must then comply with *both* section 1326(b), paying the

creditor what it is entitled to receive, *and* section 586(e) of title 28, deducting the percentage fee as so required. The trustee can only comply with *both* directives if there is enough money in the plan payment to fund both obligations.

restrict ourselves to parsing parts of speech, we risk learning a lot about leaves and twigs but learning nothing about the forest. More, we risk elevating a meaning that is "plain" only to a given myopic judicial officer as the "expression of congressional intent," even though context plainly indicates that Congress intended no such thing.

## CONCLUSION

The court concludes that the debtor's plan may not be confirmed in its present form. The confirmation hearing will be reset to afford the debtor an opportunity to modify her plan.[16]

16. It is worth noting that one way out of the situation in this case would be for the debtor to make payments to certain secured creditors outside the plan (assuming the concurrence of the trustee). While there is a split of authority in the case law on this issue, it is at least arguable that such payments do not fall within the ambit of 28 U.S.C. § 586(e), and no trustee's fee would be levied on them. *See In re Overholt,* 125 B.R. 202, 210 (S.D.Ohio 1990) (fee due only on payments *received* by trustee); *but see Fulkrod v. Savage (In re Fulkrod),* 973 F.2d 801, 802–03 (9th Cir.1992) (payments under a plan must be made by the trustee; debtor not permitted to be disbursing agent).